# Commissioners Court of Pike County v. City of Troy.

## Mandamus.

(Decided June 29, 1911. 56 South. 131.)

*Highways; Taxation; Apportionment.*—The special road tax collected under authority of section 215, Constitution 1901, cannot be apportioned among various parts of the county, and hence, acts 1909, pp 205 and 304, are inoperative as to special taxes so collected.

(Sayre, J., dissents.)

APPEAL from Pike Circuit Court.

Heard before Hon. H. A. PEARCE.

Mandamus by the City of Troy against the Commissioners' Court of Pike County. Order in favor of petitioner, and defendants appeal. Reversed and petition dismissed.

The petition alleges that there was levied and collected for Pike county by the commissioners' court thereof a road tax of one-fourth of one per cent. on the property assessed for taxes in said county. The said tax was levied for the years 1908-09, was due October 1, 1909, and delinquent January 1, 1910. It is alleged that the tax collector had collected and paid to the county treasurer on the property located in the city of Troy, for and on account of said road tax, the sum of $3,278.82, and that that amount was now held by the county treasurer. It is alleged that by virtue of the act of the Legislature approved August 26, 1909 (Acts Sp. Sess. 1909, p. 304), and by virtue of the act approved August 25, 1909 (Acts Sp. Sess. 1909, p. 205), one-half of said amount of money was due the city of Troy; that demand was made for it, and had been refused, etc. Demurrers were filed to said petition, and

the answer was made, setting up that the acts in question were unconstitutional and void. The order of the court was that the commissioners' court of Pike county pay to the city of Troy $1,639.41, for the uses and purposes set forth in said petition, and said sum be charged by said commissioners' court to its fund raised and collected by it through and by its special road tax.

E. R. BRANNEN, for appellant. Appellant's contention is that the acts of 1909, pp. 205 and 304, are unconstitutional and void so far as the tax levied and collected under the provisions of section 215, Constitution 1901, as there is a direct conflict between the two, and the Constitution must prevail.—*McCain v. The State,* 62 Ala. 138; *Jeffersonian Pub. Co. v. Hilliard,* 105 Ala. 576; *State v. Street,* 117. Ala. 203; *Board of Revenue v. The State,* 54 South. 5757.

FOSTER, SAMFORD & CARROLL, for appellee. The court properly granted the mandamus requiring the county to pay the city its pro rata part of the tax.—Acts 1903, p. 412; Sec. 1335, Code 1907, Sec. 120, Municipal Code, *So. Ry. v. Cherokee County,* 144 Ala. 579. There is no conflict between the act in question and section 215 of the Constitution.—7 Ind. App. 309; 104 Fed. 833; 119 Ia. 619. A street is a public way or road.—27 A. & E. Enc. of Law, 102; *Perry v. N. O. & M. C. R. R. Co.* 55 Ala. 420; *Brace v. N. Y. C.* 27 N. Y. 269.

McCLELLAN, J.—Appeal from an order awarding mandamus to compel the court of county commissioners of Pike county "to pay to petitioner, the city of Troy, for the uses and purposes set forth in said petition, and said sum be charged by said commissioners' court to its fund raised and collected by it through and by its *special road tax.* * * *"

The sum in question thus appears from the record to have been the product of a *special road tax* within and under the influence and control of the second pertinent proviso of section 215 of the Constitution of 1901. Hence, for the reasons set down in the original opinion delivered in *Board of Revenue of Jefferson County v. State ex rel., etc.* 172 Ala. 138, 54 South. 757, and adopted as decisive of the appeal of *State ex rel. City of Tuscaloosa v. Court of County Commissioners, infra,* 54 South. 763, the Legislature was without power or right to direct or control the disposition, by delivery to the municipality, for the construction, maintenance, improvement, or repair of *streets,* of the product of such *special road tax.* On rehearing of *Board of Revenue of Jefferson County v. State ex rel., etc., supra,* the prevailing opinion was that the levy there involved did not constitute a *special road tax* for road purposes; and, hence, the pertinent proviso of section 215 of the Constitution did not apply to forbid legislative direction or control of the fund there in question, it being, on that levy, a part of the general fund to which the pertinent proviso of section 215 had no reference.

The order appealed from is therefore reversed, and the petition is dismissed.

Reversed, and petition dismissed.

DOWDELL, C. J., and SIMPSON, ANDERSON, and MAYFIELD, JJ., concur. SAYRE, J., dissents.

SAYRE, J. (dissenting).—I cannot concede the sufficiency of the reasons assigned for declaring the act unconstitutional. The provision of the Constitution is "that to pay any debt or liability now existing against any county, incurred for the erection, construction, or maintenance of the necessary public buildings or

bridges, or that may hereafter be created for the erection of necessary public buildings, bridges, or roads, any county may levy and collect such special taxes, not to exceed one-fourth of one per centum, as may have been or may hereafter be authoried by law, which taxes so levied and collected shall be applied exclusively to the purposes for which the same were so levied and collected." The prevailing opinion, that the act is unconstitutional because it directs the application of funds raised by special county taxation to a purpose for which they were not levied and collected, rests necessarily upon the proposition that when the framers of the Constitution used the generic term "roads" they intended to exclude the species "streets." Reference is made to other sections of the Constitution in which the term "street" is employed as aptly descriptive of a thoroughfare in a municipality. The inference drawn is that the Constitution makers did not intend the inclusion of "streets" in the term "roads" when they used the latter in Section 215. That "street," as the word is ordinarily used, has a more limited meaning than "road," is freely admitted. But in Section 215 of the Constitution deals with the subject of general taxation whereas in the other sections referred to it is dealing with a subject which called for the use of the narrower word. It is dealing with charges which are not considered as taxes in the ordinary sense or within the meaning and intent of constitutional provisions governing the levy, collection, or disposition of taxes; charges in the nature of compensation exacted for benefits peculiar to the owners of abutting property; charges which should be, and heretofore have been, confined to those densely populated districts, such as cities and towns, where the highways are ordinarily called "streets." "The authorities almost universally take such an imposition, though confessedly

laid under the taxing power, out of the category of taxes and taxation, as those terms are employed in organic limitations on legislative power to levy or authorize the levying of taxes, and in general statutes."—*Birmingham v. Klein,* 89 Ala. 461, 7 South. 386, 8 L. R. A. 369. So that the use of different terms in different sections of the Constitution seems hardly to be convincing of anything more than that in dealing with different subject-matters the terms employed were aptly chosen to express the different purposes had in view.

For authority the main dependence for the theory of unconstitutionality is found in the case of *McCain v. State,* 62 Ala. 138. In that case the defendants, who were supervisors of the public streets of the town (then) of Anniston, were indicted for failing to keep a certain road or street in repair. The corporate authorities had passed an ordinance abolishing or discontinuing the road. The ruling was that the ordinance abolishing the street, was within the power of the municipal authorities. In the course of the opinion the court used this language: "To hold such public roads (referring to roads through rural districts which had been incorporated into the town), thus brought within the boundaries of an incorporated town, to be still under the jurisdiction of the court of county commissioners, would be very unnatural, and might lead to conflicts of authority, which should always be avoided. For the court of county commissioners to exercise jurisdiction over such highways as a road, and the corporate authorities to exercise jurisdiction over them as a street, would be impossible. They cannot be both a 'public road' of the county, as that phrase is understood, and a street of an incorporated village at one and the same time. One character must yield to the other." It is said, in effect, that this decision fixed a meaning for "roads" and "streets"

[Commissioners' Court of Pike County v. City of Troy.]

which has become imbedded in the Constitution. That conclusion, in my opinion, overworks the doctrine that a Constitution, like a statute, may carry with it a construction of its phraseology by adopting terms which have acquired a definite and settled meaning. Constitutions are popular instruments, and "deal with larger topics and are couched in broader phrase than legislative acts or private muniments. They do not undertake to define with minute precision in the manner of the latter, and hence their just interpretation is not always reached by the application of similar methods."— *Houseman v. Commonwealth,* 100 Pa. 222, 232. The word "roads" had never been used in the same connection in previous Constitutions. In the Constitution of 1875 it occurs only once (section 21, art. 14), and then as meaning railroads. In the present Constitution it occurs in section 242, corresponding to section 21, art. 14, of the Constitution of 1875, and in section 104, which has to do with the subject of taxation the word occurs only in that section of the Constitution of 1901 here in question. It was and is of frequent occurrence in the statutes, and most often, as is conceded, in connection with the subject of county roads. But nowhere is there evidenced a fixed understanding and use of. the word which would deny the propriety of a broader use as comprehending streets. To the contrary, in at least one case, *Gaston v. State,* 117 Ala., 23 South. 682, "public road" in a criminal statute was held to include "street." Recurring to *McCain's Case,* the expressions used by the court were proper enough in their application to the question then under consideration. But it does not seem to me that the court undertook to say that the word "road" might not have a broader meaning in other connections, nor was there any occasion for such a declaration. The present occasion seems rather to call for

a recurrence to the rule for estimating the authority of judicial expressions which was stated by Chief Justice Marshall in this language: "It is a maxim not to be disregarded that the general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented."—*Cohens v. Virginia,* 6 Wheat. 399, 5 L. Ed. 257.

. The word "road" has acquired no definite and fixed meaning in judicial decision or in ordinary use which makes necessary an interpretation of the Constitution against the power of the Legislature to pass the act in question. I have already referred to *Gaston v. State.* According to the lexicographers it is a general term, including highways, streets, and lanes.—24 Am. & Eng. Encyc. 985, 986. A street is nothing but a road in a city, town, or village, having houses and town lots on one or both sides. Cent. Dig. A road is specially a highway. Standard Dict. "Public road" and "highway" are commonly understood to mean the same thing, and include all ways which of right are common to all the people.—*Abbott v. Duluth* (C. C.) 104 Fed. 833. This court said, in *State v. Mobile,* 5 Port. 279, 30 Am. Dec. 564: "While the streets of a town are its highways, they may also be the public highways of the country." "The word 'road,' in a proper connection, may be fitly used to designate a city or borough street."—In *re Vacation of Osage Street,* 90 Pa. 117. In *Sharett's Road,* 8 Pa. 89: "It is, however, objected that a street or alley in an incorporated town is not a 'road' within the meaning of the resolution. But this objection, which is somewhat hypercritical, is fully answered by the decision of this court in the case of the *Moyamensing Road,* 4 Serg.

& R. (Pa.) 106, where it is shown the word 'street' is equivalent, in common parlance, to road or highway. Indeed, a street is strictly a road, and may be and frequently is so denominated without any violation of grammatical propriety." In *Northwestern Telephone Co. v. Minneapolis,* 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175, where a statute authorizing telegraph and telephone companies to use the public roads and highways was construed to include the streets of the city of Minneapolis, after noting that the word "highway," in actual use, embraces city streets as well as country roads, the court said: "We cannot, therefore, by looking through the charters of different cities where the words 'street' and 'highway' are used, respectively, in reference to urban thoroughfares, and by comparing the result, necessarily determine any distinction in this respect; for where a word of general import covers two classes, and another only one, the obvious and sensible inference would be that the general term was intended to embrace both." In *Stokes v. County of Scott,* 10 Iowa, 166, Webster's definiation of "road," as including "highway, street, and lane," is adopted. So in *People v. Commissioners of Buffalo Co.,* 4 Neb. 150; *Follmer v. Nuckolls Co.,* 6 Neb. 204; *So. Kansas Ry. Co. v. Oklahoma City,* 12 Okl. 82, 69 Pac. 1050. Whether the word is used broadly or in a restricted sense must be determined upon consideration of those principles which are usually observed in constitutional construction. It is to be conceded that, in the construction of statutes relating to the subject of roads and streets, attention must be given to the conflict and confusion which it may be presumed will arise from a division of control over the same subject between cities and counties—distinct and different governmental subdivisions of the state; but difficulties of that sort are by no means insuperable, and

29—173

it may be assumed that the Legislature will care for such considerations (as it has in this case by intrusting to the municipality the expenditure of that portion of the special tax appropriated to the maintenance of streets and bridges within the corporate limits), and they furnish no sufficient reason for limiting the power of the Legislature, unless there be something in the nature of the subject-matter which demands a construction of the words "roads" in the Constitution as referring to rural highways only. There is no such demand in the nature of the subject-matter. On the contrary, the territory of a county does not cease to be a part of the county when it is included within an incorporated city or town. The necessity for unbroken highways throughout the country remains, as it was, a matter of concern to all the people of the county or state. One of the most important functions of the state is to make provision for public roads for the use of the people. The powers intrusted to the counties, including the erection, supervision, and control of roads, are the powers of the state, delegated for the purposes of civil and political organization, and may be withdrawn by the state in the exercise of its sovereign will, and other instrumentalities or agencies established. While, in the exercise of its quasi legislative authority over the roads of the county, the discretion of the commissioners' court in the application of funds to particular roads and localities is not to be controlled by the courts, nor by evidence produced according to the ordinary rules of legal procedure, but by its own knowledge of the geography of the county and the needs of its people (*Askew v. Hale Co.*, 54 Ala. 639, 25 Am. Rep. 730; *Matkin v. Marengo Co.*, 137 Ala. 155, 34 South. 171), I have no doubt that the Legislature, in its discretion, may itself direct such application or commit it to other agents of its own selection. "To the common-

wealth here, as to the king of England, belongs the franchise of every highway as a trustee for the public."— *Perry v. N. O., etc., R. R. Co.,* 55 Ala. 413, 28 Am. Rep. 740.

No valid reason can be assigned, as I think, why the people, in the adoption of the Constitution, and when dealing with a fund to be raised by taxation upon all the property of the county, including that within the municipality, should be held to have used the word 'roads' in that narrow and restricted sense which would deny to the Legislature the power to permit taxes levied upon urban property to be expended in part at least in the improvement of the highways which lie before the doors of those who pay the tax. In the interpretation of this section of the Constitution, designed to promote the convenience of all the people, I see no occasion for ignoring every equitable consideration by holding that where there must be equality of burden there may not be equality of benefit.

Further, what warrant can there be for holding that the Legislature may not permit the levy of a special county tax for the building of bridges within the limits of towns or cities? There is none; and yet bridges and roads are yoked together in the Constitution, as they are in necessity, and identical considerations must influence legislation concerning them, for a public bridge is nothing unless it be a part of a public road. "A public bridge is an essential part of a road, and the erection of a bridge is but the laying out of a highway."—Elliott on Roads and Streets, § 27.

The well-considered case of *Duval County Commissioners v. Jacksonville,* 36 Fla. 196, 18 South. 339, 29 L. R. A. 416, said by the editor of the series to be the first case to present the constitutional question of the power of a county under statutory direction to turn over

to the highway or street authorities of a municipal corporation situated in the county a part of the funds raised by taxation "for county purposes," affords an argument for my position. That was a proceeding by mandamus to require the commissioners to turn over to the municipal authorities one-half of the amount realized from a special tax for public roads and bridges levied and collected on the property within the limits of the municipal corporation as provided by a statute of Florida. The Constitution of that state provides that the Legislature cannot authorize counties to levy taxes for any other than county purposes, nor can counties be authorized to devote money so raised to any other than such purposes. Without following the court through its argument, which deals not with any mere words, but with the true meaning of such provisions, I quote its conclusion as follows: "It is true that there may be a distinctively municipal purpose, as distinguished from county purposes, and, in our judgment, the Constitution of the state recognizes such distinction; but in reference to the laying out and maintenance of public streets, or municipal highways, over which not only the people of the municipality, but of the entire county, can travel, it cannot be said, we think, that they are so distinctively and exclusively a municipal purpose as to render it impossible for the Legislature to authorize the counties to devote revenue raised by county taxation for public roads on the property situated within the municipalities to the maintenance of the public streets therein."

In response to the suggestion that under the construction which the Legislature has put upon section 215 of the Constitution a "county might levy and collect the special tax in order to discharge the county liability, as the Constitution clearly intends, and yet a part of the gross special tax sum would, by legislative action, be

forbidden application to that constitutionally commanded purpose," I think it necessary only to say that no such result could follow, for the reason that a tax levied to pay a pre-existing debt or liability could not be applied for the "erection" of roads. The purpose to pay a pre-existing debt incurred for the building of roads and the purpose to "erect" or maintain other roads, whether in county or city, are different purposes, and the Legislature has evinced no purpose to break down or override the clear difference between them. It is perfectly plain that the act has relation to such special taxes as are levied for the purpose of constructing, repairing, or maintaining roads or highways. It can have no operation or effect upon special taxes levied to pay pre-existing debts.

In my judgment there is nothing in the word itself, nor in its context, nor in the policy of the state, nor in the justice and equity of the situation, which requires a construction of the word "roads" as excluding streets, which are but roads through thickly populated areas, whether incorporated or not, and I see no sufficient reason for so holding.