# County of Montgomery *v.* City of Montgomery.

## *Assumpsit.*

(Decided November 7, 1914. Rehearing denied December 17, 1914. 67 South. 311.)

1. *Highways; Taxes; Constitutional and Statutory Provision.*—Under the provisions of section 215, Constitution 1901, a special road tax levied and collected for the roads by the commissioners courts or boards of revenue, must be applied to public county roads, and not to city streets or urban ways, and hence, the provisions of section 1335, Code 1907, are unconstitutional and void.

2. *Same.*—Under section 2, Acts Special Session 1909, p. 303, a city is not entitled to the specified portion of a part of the general fund of the county gathered by taxation under the general power conferred on counties, and transferred to the road and bridge fund under the provisions of section 5766, Code 1907, since, to entitle the city to a part of the funds, the application or devotion of a portion of the tax to road or highway purposes must be provided for in or by the tax levy.

3. *Taxation; Nature.*—A tax is an authorized exaction for the support of the government.

(Mayfield and Sayre, JJ., dissent.)

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Action by the city of Montgomery against the county of Montgomery to recover its portion of the alleged road and bridge fund set aside by the county of Montgomery for that purpose, Judgment for plaintiff, and defendant appeals. Reversed and rendered.

JOHN R. TYSON, and A. H. ARRINGTON, for appellant.

W. A. GUNTER, for appellee.

McCLELLAN, J.—This is an action at law by the city of Montgomery against the county of Montgomery. Its purpose and object is to recover of the county of Montgomery $30,000 as the city of Montgomery's as-

serted portion of funds garnered by the county author-
ity, and directed by that authority to be devoted to
the improvement, etc., of public roads and bridges with-
in the confines of the county of Montgomery. The quo-
tation of the first count of the complaint, along with
the material parts of the agreed statement of facts, will
serve to fully disclose the controversy now under re-
view. The first count reads: "The plaintiff claims of
the defendant the sum of thirty thousand ($30,000)
dollars, with interest thereon from the first day of
March, 1912, for this, to wit: That in the month of
February, 1912, the board of revenue of the county of
Montgomery transferred to the road and bridge fund
of said county from its general fund, collected under
the general levy for general purposes, the sum of eighty-
five thousand ($85,000) dollars, and that thereby it be-
came and was the duty of the board of revenue of said
county, making said transfer, to pay to the plaintiff,
out of said funds so transferred, one-half of the propor-
tion of said sum so transferred, as was collected on the
property located in the corporate limits of the plaintiff.

"And plaintiff avers that one-half of the said propor-
tion of said sum so transferred to the road and bridge
fund, which was collected on the property located in
the corporate limits of the plaintiff, amounted to the
sum of thirty thousand ($30,000) dollars, or other
large sum; that the said defendant failed and refused
to pay the said money, or any part thereof, to the plain-
tiff, and still refuses to pay the same, and used the
same for other purposes; and plaintiff claims the said
sum as now due to it, with interest thereon from, to
wit, the first day of March, 1912."

The agreed statement of facts is as follows: "It is
agreed by and between the attorneys of record in this
cause that the board of revenue of Montgomery county

during the year 1911 made a general levy of one-half of 1 per cent. for general purposes, and that in that levy there was no specification that any part of it was for road purposes; that during the month of February, 1912, the board of revenue of Montgomery county entered an order transferring $85,000 as a surplus from the general fund in the treasury of the county to the road and bridge fund belonging to county; that the general fund of the county, at the time this order was entered, was made up from taxes collected under the general levy of one-half of 1 per cent. and from funds collected from license taxes, taxes on recorded mortgages, money derived from hard labor convicts, and from fines imposed for convictions for criminal offenses.

"It is further agreed that under the general levy of one-half of 1 per cent. made in June, 1911, by the board of revenue, there was collected between October 1, 1911, and September 30, 1912, the sum of $155,553.39, and that during this period there was collected from sources other than the one-half of 1 per cent. levy approximately $80,000; the total receipts derived from one-half of 1 per cent. and other sources approximated $235,555.39, of which sum $102,241.19 was expended for county purposes other than road purposes, leaving a balance of $133,314.20, out of which the $85,000 was transferred to the road and bridge fund, which was expended by the county before this suit was commenced; that the books of the county do not show the assessed values of city property separately from the assessed values of the property outside of the city; that this however, is shown by the books kept by the city, in which all assessed values of property within the city were taken from the county books of assessment.

"That for the year 1911 the total assessed tax value for the county was $31,861,679, as shown by the books

[County of Montgomery v. City of Montgomery.]

of the county. That, as shown by the books of the city, of the total assessed tax values of the county, $22,394,-739 was the assessed value of property in the city; that the assessed value of the property in the city was 70.29 per cent. of the total assessed tax values of the entire county; that 70.29 per cent. of one-half of $85,000 is $29,873.25; and that the interest on this amount from March 1, 1912, to this date, is $3,896.77, making a total of $33,770.02."

The city's claim is based upon sections 1 and 2 of the act approved August 26, 1909.—Acts Sp. Sess. 1909, pp. 303, 304. Those sections read: "Section 1. That the maintenance of streets of municipalities in the state of Alabama is hereby, for the purposes of this act, declared to be a county matter.

"Sec. 2. That courts of county commissioners and boards of revenue, where there is levied a road tax, general or special, or where by the tax levy a portion of the tax is levied for or devoted to the purpose of constructing, repairing or maintaining roads or highways of any description in the county, shall pay over each year to each municipality therein one-half of the money collected on such road tax on the property located in such municipality."

Pretermitting the consideration of all other questions that might be proposed on the record for review, a controlling meritorious issue of law presented is whether the sum claimed is a fund to which the city has a legal right.

(1) In the several decisions it has been decided here, after repeated full consideration of the question, that the application of a special road tax, levied and collected within the purview of section 215 of the Constitution of 1901, cannot be controlled by legislative enactment, since the Constitution commands that funds

24—190

so garnered shall be applied to public county roads, not to urban ways.—*City of Tuscaloosa v. Court of County Commissioners of Tuscaloosa,* 173 Ala. 724, 54 South. 763 (a ruling based on opinion in *Board of Revenue v. State ex rel. City of Birmingham,* 172 Ala. 138, 153-155, 5 South. 757) ; *Pike County v. City of Troy,* 173 Ala. 442, 56 South. 131, 274; *Commissioners' Court of Tuscaloosa County v. State ex rel. City of Tuscaloosa,* 180 Ala. 479, 61 South. 431. It follows, from the doctrine of these decisions, that section 1335 of the Code of 1907 (as readopted by the act of August 26, 1909 [Acts Sp. Sess. 1909, p. 174]), which purports to alone deal with a special road and bridge tax, was and is constitutionally invalid.—Constitution 1901, § 215, div. (a).

(2) As appears, the fund here in question is not the product of a special road or bridge tax, under section 215 of the Constitution; but it is a part of the general fund of the county, gathered by taxation under the general power conferred on counties. As also appears, the fund here in question is a part of the fund segregated by the county authorities in virtue of Code, § 5766, which reads: "The court of county commissioners or board of revenue of any county of the state may transfer to the road fund of the county any surplus of general funds of the county in the county treasury or any part of such surplus whenever in the judgment of said court or board it will promote the interest of the county to make such transfer. Any surplus of general funds so transferred shall be used for the working of the public roads or the building of bridges or otherwise improving the public roads as the said court or board may determine."

We come, then, to this unclouded inquiry: Did the act of 1909 (quoted ante) effect to invest the city of

[County of Montgomery v. City of Montgomery.]

Montgomery with the right to a proportion of funds not the product of a tax laid "for the purpose of constructing, repairing, or maintaining roads or highways of any description in the county?" On the inquiry presented the really controlling words of the act of 1909 are these: "Where there is levied a road tax, general or special, or where by the tax levy a portion of the tax is levied for or devoted to the purpose of constructing, repairing or maintaining roads or highways of any description, in the county."

It is apparent that the first phrase, viz., "where there is levied a road tax, general or special," had and has reference to a specific levy of a tax for the construction, repair and maintenance of public county roads. And it is equally obvious that the fund here sued for is not of the character of fund defined in the first phrase of section 2, just quoted. While this is manifestly true, the mentioned phrase is of consequence and importance in the ascertainment of the legislative intent sought to be expressed in the next succeeding phrase of section 2 of the act, viz.: "Or where by the tax levy a portion of the tax is levied for or devoted to the purpose of constructing, repairing or maintaining roads or highways of any description, in the county."

It is upon the interpretation of the last-quoted language of section 2, read in connection with the other provisions of the act, that the decision here must turn.

It is entirely clear that the lawmakers purposed to require the payment over to municipalities of a proportion of certain funds that had come into the control of the county authorities. What fund—what description or character of funds—was required to be so paid over? In defining or describing the funds to be so paid over the statute writers employed both general

yet plain, terms, and also particular terms, just as plain. The general terms of description, to which we have just referred, are these, the particularly expressive words being put in capitals: "Shall pay over each year to each municipality therein one-half of the money COLLECTED ON SUCH ROAD TAX on the property located in such municipality;" and (in section 3) "* * * provided that IF THE TAX IS LEVIED for any particular class of roads or highways, such sums shall be used on the streets of the municipality for roads of a similar character to such roads or highways."

These general, descriptive terms plainly show that in the legislative mind a particular character of tax, or a tax the product of which was to have application to a particular government purpose, viz., public roads or "highways," was the basis of the dominant idea. It is not possible to read the act and entertain any other conclusion with respect to the intent of the lawmakers.

(3) A tax is an authoritative exaction for the support of the government.—8 Words and Phrases, p. 6867 et seq. In this sense was the authoritative source and character of the funds dealt with in the act considered by the Legislature in its enactment now under view.

When the particular terms employed in this act by the lawmakers, viz., "or where by the tax levy a portion of the tax is levied for or devoted to the purpose" described, are read and considered in connection with the general terms before quoted in this opinion, it is clear, beyond any doubt, that the Legislature was seeking, in the use of particular terms in perfect accord with the general terms indicated, to define or describe the product of a tax that in some law-fixed manner was impressed, when exacted of the taxpayer by the taxing authority of the county, with the governmentally or-

dained assurance and avowed purpose to devote that product of taxation to the construction, repair, or maintenance of public county roads, into which distinct class of highways the lawmakers intended, in that act, to introduce streets by denominating their maintenance a "county matter." The correctness of this interpretation of the presently important features of the act is confirmed by several considerations.

In the first place, the very plain letter of the act (section 2) defines the fund to be affected as the product of a tax levy, for it says: "Where by the tax levy a portion of the tax is levied for or devoted to" road or highway purposes. Taxes are annually levied, as section 2 contemplated, by courts of county commissioners and boards of revenue, at a definite time.—Code, § 2155. "The levy of taxes is a legislative function, and declares the subjects and rate of taxation."—*Perry County v. Railroad Co.*, 58 Ala. 559. The authority to levy county taxes is conferred, as stated, on the county government.—*Perry County v. Railroad Co., supra.* The levy of taxes is the act of establishing a "rule of action," and assessment is the administration of the rule.—*Perry County v. Railroad Co., supra.* When authority to do so is conferred on the county government, the levy is the first step in the gathering of taxes. In the act, if we do not unnecessarily repeat, it was plainly provided, by the terms last quoted, that the condition to the right of the municipality to the therein stipulated portion of the fund was a tax levy in or by which provision was made for the application—devotion—of a portion of the money (tax) to road or highway purposes. Unless such provision was thus inceptively made, viz., when the tax levy was made, it could not, under this act, be thereafter introduced into the levy by a mere order of the county body. So, when it

[County of Montgomery v. City of Montgomery.]

was provided that the tax levy should give assurance that a "portion of the tax" was "levied for or devoted to" road or highway purposes, reference could alone have been had to the time and the occasion and the act of levying a tax, for general purposes though it was levied, and not to some subsequent date or occasion when the mere discretionary judgment of the county body, in respect of surplus funds in the general fund (section 5766) of the county, might invite the transfer of such surplus to the road fund.

It is insisted that a proper consideration and interpretation of the word "devoted," in section 2 as several times before quoted, should and would lead to the conclusion that the city's right to the fund claimed would be entirely vindicated, for that the act would then have and should have application to funds not impressed by the tax levy with the promised purpose to apply a portion of the product of the tax to road or highway objects, but application to money devoted by order of the county body to the construction, etc., of roads or highways.

This insistence is refuted by the plain words and clear grammatical relation associated with and component of the expression in which the word "devoted" occurs. If we omit the words "levied for or" (preceding the word "devoted") the sentence reads: "Or where by the tax levy a portion of the tax is * * * devoted to the purpose," etc. The subject of the sentence is "tax." The verb is "devoted." The phrase, "where by the tax levy a portion of the," is related to and descriptive of the subject, "tax." The tax devoted is the tax answering to the related descriptive phrase just mentioned. There is no other way to read the sentence. There is no other possible subject of the verb "devoted." It is the word "tax." Without obvious violence

to its elements and structure, the sentence—following the disjunctive "or" and as deleted above—cannot be read otherwise than as having "tax" for its subject and "devoted" as its verb. This being patently true, it is not possible to deny to the words preceding "tax" in the sentence the office of describing tax. That preceding phrase has two related, qualifying ideas in it, viz., that expressed by the word defining the measure of the tax that is devoted to the purpose stipulated, namely, "portion," and that expressed by the words "where by the tax levy," thereby defining and describing the place whereat and the agency whereof—implying governmental authority so to do—the portion of the tax devoted to the purpose prescribed has been ascertained and its devotion to the purpose prescribed assured. The act in the respect under consideration simply means what it says, no more, no less. "Devoted," as therein used, consists alone with the meaning we have stated. That which is required to be paid in a proportion to a municipality is tax money that was "by the tax levy" devoted to road or highway purposes.

Now it is also suggested that to interpret the act as we have done effects to read the "where by the tax levy" sentence to the same legislative result as the antecedent thereto provisions of section 2 plainly contemplates. Not so. The provisions of section 2, preceding the sentence employing the word "devoted" has reference to a road tax, apart from the taxes laid for general county purposes, in which a part of the money derived for general county purposes was designated by law for use in constructing, repairing, or maintaining county roads, etc.

Some collateral legislative circumstances may be here noted, for they are of service in this matter:

The act of 1909 was introduced in the House by a member from Jefferson county. It seems to have passed both branches of the Legislature and to have been approved by the Executive in substantially the same form as it was when introduced. The county of Jefferson had a local law that dealt with public roads, etc., improvement. The original local law was approved February 17, 1885.—Acts 1884-85, p. 709. It appears to have been since twice amended.—See Acts 1894-95, p. 205; Acts 1896-97, p. 1079. The effect of the original and amended local laws was to require the county governing body to include in its levy one-tenth of 1 per cent. for macadam road improvement, but that the aggregate levy for any one year should not exceed one-half of 1 per cent. for ordinary county purposes (the limit fixed by the Constitution of 1875), not including necessary public buildings and bridges, which that organic law, though omitting roads, allowed to be provided for by a special tax. So it readily appears that by law there was afforded a subject upon which the alternative sentence of section 2 of the act of 1909 could operate. Others of like character may have existed in 1909. It would seem that the act considered in *State v. Street,* 117 Ala. 203, 23 South. 807, had provisions of like character to the indicated feature of the Jefferson county law. It also appears that the Calhoun county law, involved in *Commissioners' Court of Calhoun County v. City of Anniston,* 176 Ala. 605, 58 South. 252, was of like character. In short, and meeting the provisions of the alternative sentence of section 2 of the act of 1909, there were laws that allowed or required a particular part of the one-half of that 1 per cent. county levy to be designated for employment on public roads.

It is further insisted that the major question to which we have given attention in this opinion was authoritatively decided by this court in *Tuscaloosa County v. Tuscaloosa City,* 180 Ala. 479, 61 South. 431. A review of that decision, in the light of the legal status there brought under consideration, will disclose that that decision is without particular point or application on this appeal.

By virtue of an act, applicable to Tuscaloosa county, approved September 29, 1903 (Local Acts 1903, p. 433), the order of the commissioner's court, considered in the last-cited decision, was made. See 180 Ala. 484, 61 South. 431. That local act was amended, as appears in Local Acts 1907, p. 227. The local act of 1903, in an effort to promote road improvement, provided that at the first regular meeting of the commissioners' court after December 1, 1903, and in each year thereafter, "said court shall appropriate and set apart out of the taxes levied for general purposes in said county such sum as the condition of the county treasury shall warrant, but in no case less than one-sixth of 1 per cent. of the total assessed valuation of property in said county, which sum shall be a part of the one-half of 1 per cent authorized by law for general county purposes." Provision was then made with respect to the special road tax levied under section 215 of the Constitution, which this court considered when the decision reported in 173 Ala. 724, 54 South. 763, was delivered. It will·be seen that a minimum proportion of the product of one-sixth of 1 per cent. on the total assessed value of all property tax laid and collected in Tuscaloosa county for general county purposes was fixed by the local act, thereby directly impressing that part of the tax levied for general county purposes with the law's imperative order devoting the sum so produced to the purpose

defined in section 2 of the act of 1909. In other words, the indicated provisions of the local act operated to imprint upon the levy, raising the money there sought by the city of Tuscaloosa for general county purposes, the condition or exaction that of the product of the levy so made a definite proportion thereof should become a part of the road and bridge fund; that the levy for general county purposes included as the result of legal command superior to the county body a specific percentage minimum of money raised by taxation under a levy for general county purposes that was, when collected by the county, a part of the road and bridge fund. No. such law as that in force, in this respect, in Tuscaloosa county, is made to appear to be of force in Montgomery county to effect the question here presented.

In *Tuscaloosa County v. City of Tuscaloosa*, 180 Ala. 479, 61 South. 431, no account appears to have been taken or consideration invited by the litigants looking to the separation from the one-sixth of 1 per cent. minimum—prescribed by the local act and designated to the local act as a marked part of the product of the levy for general county purposes—of the sum in excess thereof that the county body transferred to the road and bridge fund in the exercise of the discretion reposed in them by the local act. Hence that decision had no invitation to separate from a larger mass that to which, under the act of 1909, the city of Tuscaloosa was entitled, viz., one-half of one-sixth of 1 per cent. of taxes paid on property in the city of Tuscaloosa. So the decision reported in 180 Ala. 479, 61 South. 431, is without bearing on this appeal.

The first count of the complaint was subject to the demurrer. On the agreed statement of facts the city of Montgomery was without right to recover the sum

claimed, or any other less sum, from the county of Montgomery under or in virtue of the act of 1909. Judgment was for the city. Consistent with the provisions of Code, § 5361, judgment will be here rendered for the county of Montgomery; and the city of Montgomery will be taxed with the costs in the lower court and in this court on appeal.

Under and by authority of the foregoing opinion, like judgments will be entered in causes numbered 86 to 91, inclusive.

Reversed and rendered.

ANDERSON, C. J., and SOMERVILLE, DE GRAFFENRIED, and GARDNER, JJ., concur.

MAYFIELD, J.— (Dissenting.)—I cannot concur in the opinion or decision in this case, for the reason that, to my mind, the certainly, if not clearly, expressed will of the Legislature is thereby defeated. It is in effect held that the statute construed applies only to cases in which the counties have levied a special road tax, and not to cases like this, where a part of the general levy is thereafter applied or devoted to road purposes. Such is not, in my humble judgment, a proper construction of the statute in question. If the construction stated is the proper one, then the statute was and is wholly useless, for the reason that there is no field of operation for it.

Section 1335 of the Code provides for exactly what the court now holds is the only effect to be given to the later act of August 27, 1909 (Acts 1909, pp. 303, 304). I am of the opinion that the later act was passed to provide for cases like the one in question, where there was no levy of a special road or bridge tax, but where the funds or proceeds of a tax levy were devoted

to the purpose of constructing, repairing, or maintaining roads or highways of any description. It appears to me that the only difference between the two statutes is that the latter applies to general levies of road taxes, and to cases where there is no general or special levy for road purposes, but where any part of any tax levy is devoted to the purpose of constructing, repairing, or maintaining roads.

If I correctly understand the majority opinion, it holds that, in order for the city to be entitled to any part of the county taxes under this statute, the fund or tax must be "devoted to the purposes" mentioned in the statute, by the tax levy; that is, if the levy by which the tax is raised does not so provide, then no part of the county's taxes is available to the city, no matter if it is subsequently used or devoted by the county authorities to the purposes mentioned in the statute. I may be in error in construing the opinion, but this is what the opinion seems to hold. If the fund is to be "devoted to the purposes mentioned in the statute, by a tax levy"—that is, if the levy is the sole authority or agency for appropriating or devoting the fund—then I cannot conceive how it is possible to so "devote" it. It may be that a "tax levy" can "devote" the proceeds of the levy; but I think it safe to say that such a thing has never been attempted. The levy can, of course, be made for a general or special purpose, and such is usually done; but I never before heard of a levy "devoting" the taxes or proceeds. The levy might provide that when the taxes were collected they should be devoted to the purposes for which the levy was made; but I cannot understand how the levy can actually devote the proceeds, which are not then ascertainable, much less available for the purposes of the levy. A county tax levy is only the fixing of the tax

rate for the general or special purpose for which the
levy is made, and the naming of the purpose for which
it is made. The levy of taxes is a legislative function,
while the assessment, the collection, and the devoting
of the taxes or proceeds, when collected, are adminis-
trative functions, of government. It has never been the
custom or policy for the levy, as a part of it, to assess,
collect, or devote the taxes. This is well pointed out
by Judge Stone in the case of *Perry County v. Railroad
Company,* 58 Ala. 555, a case cited in the majority opin-
ion, where he says: "Levy and assessment have very
different meanings. The levy of taxes is a legislative
function, and declares the subjects and rate of taxa-
tion.—Burroughs on Taxation, 194; Cooley on Taxa-
tion, 244, 245. Assessment is quasi judicial, and con-
sists in making out a list of the taxpayer's taxable prop-
erty, and fixing its valuation or appraisement.—Hil-
liard on Taxation, 290. Taxable property is here used
in its broad sense, and embraces all subjects of taxa-
tion, on which a tax has been levied by the lawmaking
power. The distinction is the difference between pre-
scribing a rule of action and administering that rule to
persons and subjects that fall within its provisions.
The Legislature levies states taxes, and the tax asses-
sor assesses them, except the tax on railroads and their
rolling stock, which is assessed by the auditor. The
court of county commissioners levies the county tax,
providing for no assessment, but adopting the state as-
sessment, as the basis and measure of the taxpayer's
liability. It also adopts the aggregate of the state as-
sessment as the basis and postulate by which it adjusts
the county levy, so as thereby to raise the required sum
to meet the county wants. These are the data which
enable the court to determine the proper percentage to
be levied on the state assessment, to provide for coun-

ty expenses. Hence the proportion which the county demands bear to the aggregate of the state assessment. State taxes are assessed; county taxes are only levied. A law which levies a tax, and provides for its assessment, will not justify the collection of the tax until the assessment is first made. To attempt otherwise would be equivalent to an attempt to execute a law against a person or thing before it had been judicially ascertained and determined that such person or thing was amenable to its provisions."

Surely there is more difference between the levy and the devotion of the taxes than there is between the levy and the assessment. I concede that the statute is not as clear in its meaning as it could be made; but I do think the meaning and intention is made certain, when it is construed in connection with other statutes on similar subjects especially section 1335 of the Code. It is true that section 1335 was held invalid (see the case of *Anniston v. Calhoun County*, 158 Ala. 68, 48 South. 605); but that defect was cured by a readoption of the Code on the very day the subsequent statute here construed was approved. It has also been held that neither of the statutes could be applied to special levies made under subdivision "a" of section 215 of the Constitution, but that they were applicable to tax levies, general or special, where the levy was not in excess of fifty cents on the $100 worth of taxable property. See case of *Tuscaloosa County v. Tuscaloosa City*, 180 Ala. 479, 61 South. 431, which reviews and cites the authorities.

I cannot concur in that part of the majority opinion which attempts to distinguish this case from that of *Tuscaloosa County v. Tuscaloosa City, supra*. The fund there subjected to the city was not a general or special levy for road purposes; but it was a part of the fund levied and collected for general county pur-

poses, and thereafter set apart from the general fund
to the road fund. The facts in that case are almost
identical with the facts in this case. The only differ-
ence is that the funds in that case were reached by
mandamus before they were expended, while here they
had been expended or already devoted, and consequent-
ly the specified funds or money set apart could not be
reached or subjected by mandamus, but only the equiv-
alent could be reached, in a common-law action for
money had and received. That I am correct in my
opinion, that the fund subjected in the *Tuscaloosa Case*
was a part of the general tax fund, and general levy
for county purposes, and not a part of any general or
special levy for road purposes, is borne out by the opin-
ion of Anderson, J. (now Chief Justice of this court),
in the opinion in that case. To show this, I quote two
excerpts from his opinion, one of which leaves it doubt-
ful as to whether all the fund subjected was a part of
the general fund, or of the road fund; but the last
makes it certain, as I remember the facts of that record
to show, that it was a part of the general tax fund, and
not a part of the road fund or road levy. It is there
said: "It appears that the order appropriating the fund
in question purports to have been made under the act
of 1903 (Laws 1903, p. 433), instead of the act of 1907
(Local Acts 1907, p. 227), and which amended or re-
pealed said act of 1903; yet it appears that the fund
was transferred to the 'Road and Bridge Fund' of Tus-
caloosa county, and one-half thereof, as was raised
under the general tax on property within the city of
Tuscaloosa, either by a levy for road purposes or after-
wards set apart for said purpose, should have been
turned over to the city, instead of to the road and
bridge fund."

"It seems, however, that the fund in question—that is, which is being sought—was a part of the general tax, and was set apart for roads and bridges, not public buildings, and instead of appropriating all of it to the road and bridge fund, a portion should have been turned over to the city of Tuscaloosa."

The local act of 1903 (page 433), above referred to, had nothing to do with special or general levies for road purposes, but related to the authority for setting apart portions of the general fund, and general levies, as distinguished from special levies, to the road and bridge fund, just as was done in this case, under a general statute. That local act, in part, provided as follows: "At the first regular meeting of the court of county commissioners of Tuscaloosa county, Alabama, to be held after the first day of December, 1903, and at the first regular meeting of said court in each year thereafter said court shall appropriate and set apart out of the taxes levied for general purposes in said county such sum as the condition of the county treasury shall warrant, but in no case less than one sixth of one per centum of the total assessed valuation of property in said county, which sum shall be a part of the one-half of one per centum authorized by law for general county purposes."

The only special road tax for Tuscaloosa county was the one-fourth of 1 per centum levied under subdivision "a" of section 215 of the Constitution, which this court had, in a previous case, decided could not be subjected by the city; so the only fund which could have been subjected in Tuscaloosa county was a part of the general fund for general county purposes, which was set aside to road purposes. The only difference between the *Tuscaloosa County Case* and the case in hand is that the same fund, in the one case, was set aside under

a local act which required at least one-sixth of the general fund to be set aside; whereas, in the latter case, it was set aside or transferred from the general fund to the road fund under a general statute which allows the surplus of the general fund to be so transferred.

To show that the construction placed upon the statute by the majority opinion cannot be the correct one, and cannot be applied, is well illustrated by the *Tuscaloosa Cases*. In that county, the court of county commissioners, who levy the general and special taxes, and set apart the funds for the roads and bridges, have nothing whatever to do with the "devotion" or expenditure of the funds. This is done exclusively by another and a different board, viz., the board of public works; that is, the power that levies and sets apart can have nothing whatever to do with the expending or devotion of the funds. They have nothing to do with the repairing or maintenance of the public roads so far as these funds are concerned; but it is done by a board which has no power to levy any tax.

To sustain the construction placed on the statute by the majority, the courts take judicial knowledge of the facts that a member from Jefferson county introduced the bill, and that Jefferson county has local laws for levying road taxes, which other counties have not, thereby intending to meet the needs of Jefferson county. If the court can take judicial knowledge of these facts, can and should it not take notice of the fact that the *Jefferson County Case,* so far as its special levy for road purposes is concerned, is covered as by a blanket by section 1335 of the Code, and that the whole statute would be useless so far as the special road levy was concerned?

It seems to me that the last statute was enacted to reach funds which were taken from the general fund

for general purposes, and applied or devoted to the purposes mentioned in the statute. I think the statute says so, in terms, and we so expressly held, in the *Tuscaloosa Case,* which is not overruled, and, as I have shown, cannot be distinguished from the case in hand. It seems to me that the court can and should take judicial knowledge of the fact that the statute in question was enacted for the very purpose of reaching funds which have been levied and "devoted" exactly as were the funds in this and in the *Tuscaloosa Cases.*

I cannot agree to the grammatical analysis and parsing of the statute, as contained in the majority opinion, by means of which the subject of the important and controlling passive verb "is devoted" is said to be the noun "tax." That part of the opinion to which I cannot agree reads as follows: "If we omit the words 'levied for or' (preceding the word 'devoted'), the sentence reads: 'Or where by the tax levy a portion of the tax is  *  *  *  devoted to the purpose,' etc. The subject of the sentence is 'tax.' The verb is 'devoted.' The phrase 'where by the tax levy a portion of the' is related to and descriptive of the subject, 'tax.' The tax devoted is the tax answering to the related descriptive phrase just metioned. There is no other way to read the sentence. There is no other possible subject of the verb 'devoted.' It is the word 'tax.' "

The word "tax" occurs twice in the sentence which is analyzed and parsed; but in neither case, in my judgment, is it the subject of the passive verb "is devoted." Where the word "tax" first occurs it is not even a noun, but is an adjective, describing the noun "levy," which noun is in the objective case, governed by the preposition "by." Where it occurs the second time it is a noun, but not in the nominative case, or the subject of the passive verb "is devoted," but is in the possessive case,

and governed by the preposition "of." The word "portion" is the subject of the verb "is devoted." I confess that this may at first blush appear to be hypercritical, for the reason that the word "portion" is referable to the word "tax;" that is, a "portion of the tax." But in my judgment it is all-important if the statute is to be construed by strict grammatical rule rather than by the legislative intention. Strictly and grammatically considered, neither a tax, a levy, nor a tax levy, can be devoted to any purpose; it is only 'the funds or proceeds arising therefrom which can be devoted to any purpose. It is not the "tax" as a whole, or a unit, which by the levy is to be devoted, but where any portion or any part of any tax levy is devoted to the purposes mentioned. Of course, the levy cannot be devoted, nor can the tax, the fruit, or the proceeds thereof, be devoted, until gathered and collected; and in my judgment the certain legislative, if not grammatical, meaning of the sentence in question is that if any portion of any tax levy by a county, or the proceeds of such a levy is devoted to the purposes mentioned in the statute, then one-half of that collected from the property situated within any city must be by the county paid over to the city. It is for this reason that the word "portion" is made the subject of the verb "devoted," rather than the word "tax" or "levy."

The very object of the alternative sentence is to reach cases like this, in which there is no road tax levy; but a portion of the proceeds of some other tax levy is devoted to road purposes. In such a case, the portion so devoted must then be prorated as the statute directs. If the tax is the unit which must by the levy be devoted to the purposes mentioned, the word "portion," the real subject of the verb, is wholly useless.

SAYRE, J., concurs in the views of the writer.