(91 South. 351)

**CENTRAL OF GEORGIA RY. CO. v. DOTHAN NAT. BANK.** (4 Div. 913.)

(Supreme Court of Alabama. Oct. 13, 1921. Rehearing Denied Nov. 17, 1921.)

**1. Judgment ⬯821—In an action for conversion plea of foreign judgment as res judicata held insufficient.**

Where complaint alleges that buyer purchased a car of cotton seed meal and consigned it to himself at Richmond, Va., delivering it to a railroad company, taking its bill of lading therefor, order notify buyer, and in payment seller drew its draft on buyer for the price, attached the bill of lading which seller indorsed to complainant bank, and the goods were delivered by connecting carrier to another company, without bill of lading, which company deposited the invoice price, and subsequently sued the carrier and complainant in Virginia for return of the money, to which complainant made no claim, *held* that pleas that such judgment was binding upon complainant in an action against the carrier for conversion, must fall, for such matters were not adjudicated in the former judgment, where the pleas did not show that complainant had ratified or waived its rights under the shipping contract.

**2. Judgment ⬯821 — Judgment in another state regarding fund deposited for goods received from carrier held not to preclude action against carrier for conversion.**

Where complainant had the option of appearing in a Virginia court to litigate its claim to a fund deposited by a party procuring a car of goods from the defendant carrier without a bill of lading, or of proceeding against the carrier for conversion, a judgment in the Virginia court, which the complainant did not contest, would not prevent complainant's proceeding for conversion.

**3. Carriers ⬯93—Bank holding draft with bill of lading held not to have ratified carrier's authorized delivery of goods so as to preclude its suit therefor.**

The fact that a bank had a draft indorsed and delivered to it, with bill of lading attached, presented for payment before or after the carrier's unauthorized delivery of the shipment, or whether with or without notice of said delivery, did not operate as a ratification thereof so as to preclude the bank from maintaining action against the carrier for failure to deliver or in delivering without surrender of the bill of lading.

Appeal from Circuit Court, Houston County; H. A. Pearce, Judge.

Action by the Dothan National Bank against the Central of Georgia Railway Company, for a breach of contract, in failing to deliver or in delivering without surrendering the bill of lading, a certain carload of cotton seed meal. Judgment for the defendant, and the plaintiff appeals. Affirmed.

The complaint alleges that the Boston Oil Mill Company purchased a carload of cotton seed meal from the Planter's Cotton Oil Company, and consigned it to the Boston Oil Mill Company, at Richmond, Va., delivering it with the Central of Georgia Railway Company, taking its bill of lading therefor, order notify Boston Oil Mill Company, Richmond, Va., and in payment of the Planter's Cotton Oil Company, drew its draft on the Boston Oil Mill Company, of Richmond, Va., for the price of the cotton seed meal, and attached the bill of lading to the draft, and the Planter's Cotton Oil Company sold, in-

dorsed, and delivered to the Dothan National Bank said bill of lading and draft.

The following are the special pleas referred to:

(2) Further answering in said cause, the defendant says that this suit is for recovery of the value of one car of cotton seed meal, shipped by the Boston Oil Mill Company, from Dothan, Ala., on July 13, 1917, to its order, at Richmond, Va., upon a bill of lading issued by defendant, upon which lading it was directed that the Richmond Guano Company of Richmond, Va., be notified, to which said bill of lading was attached a sight draft on the said Richmond Guano Company, which lading and draft was indorsed to the plaintiff bank and by plaintiff bank forwarded, through its banking correspondents, for collection; that said car of meal was intended for and had been sold by said Boston Oil Mill Company to said Richmond Guano Company and was transported over the lines of the defendant to the connecting lines of the Seaboard Air Line Railroad Company, and by the latter railway company transported to the city of Richmond, Va., and there delivered to the said Richmond Guano Company, for whom it was intended and to whom it had been sold as aforesaid; that said draft and lading forwarded as aforesaid for collection was delayed in reaching said city of Richmond, Va., and, to effect prompt delivery of said car of meal, the said Seaboard Air Line Railway Company allowed the said Richmond Guano Company to deposit in cash, with the said railway company, the invoice price of said meal to wit, $1,465.57, to protect said draft when it should arrive and to protect the said railway company in the delivery thereof, and upon deposit of the said sum with and for the purpose aforesaid, the said Seaboard Air Line Railway Company delivered said car of meal to said Richmond Guano Company; and defendant avers that, before the arrival of said draft and lading, said money representing the value of said car of meal being then in the jurisdiction of the circuit court of the city of Richmond, Va., the said Richmond Guano Company sued out its process of attachment in said circuit court of Richmond, Va., in its behalf as plaintiff, and against the said Boston Oil Mill Company, as defendant, and procured a writ of garnishment thereon and caused the same to be served on said Seaboard Air Line Railway Company and L. R. Goulder, agent of the said railway company, and L. R. Goulder individually, returnable to said court; that said Seaboard Air Line Railway and the said L. R. Goulder duly answered the mandate of said writ, admitting indebtedness in the aforesaid sum of $1,465.57 to said Boston Oil Mill Company, and the possession of said sum of money aforesaid, and suggested in their said answers in said cause that the Dothan National Bank, of Dothan, Ala., the plaintiff in this suit, claimed the said money garnished and asked that an order be made by said court directing notice to the said Dothan National Bank, of Dothan, Ala., to appear and prove or relinquish its claim to said money; whereupon the said court ordered that notice issue and be served on the said Dothan National Bank, of Dothan, Ala., the plaintiff in this suit, to appear by a date named in said order and prove or relinquish its said claim to said money, which notice was duly issued and served on said bank by personal service on the president of said bank, which service was in conformity with, and authorized by, the laws of said state of Virginia, and required said bank to appear in said cause and prove or relinquish its said claim; that said plaintiff bank failed to appear in said cause after notice as aforesaid, and the court thereupon rendered and entered the following judgment in said cause, to wit:

"And now at this day, to wit, at a circuit court of the city of Richmond, held in the courtroom in said city in the city hall thereof, on Tuesday, the 4th day of February, 1919 (being the day and year first herein written), upon an attachment, this day came again the plaintiff by its attorney, and it appearing from the answer of the Seaboard Air Line Railway Company, filed February 8, 1918, to the attachment issued herein, that it had in its hands subject to said attachment, the sum of $1,465.-67, but claimed by the Dothan National Bank, of Dothan, Ala., and it appearing that the plaintiff recovered a judgment against the defendant for $1,915.68, on the 7th day of February, 1918, and it further appearing that the claimant the Dothan National Bank, of Dothan, Ala., was personally served on the 16th day of February, 1918, with a copy of the order entered herein, on the 8th day of February, 1918. requiring it to appear here on the 11th day of March, 1918, and maintain or relinquish its said claim, and said claimant failing to appear as directed, it was ordered that the Seaboard Air Line Railway Company do pay to the plaintiff, or S. S. P. Patterson, its attorney, the said sum of $1,465.67, to be a credit upon the plaintiff's judgment, upon the execution of a bond with good security in the penalty of $3,000. conditional to perform such further orders of the court, on the appearance of the defendant and its making defense."

The defendant hereto attaches a true and exact copy of all the proceedings in the said circuit court of the city of Richmond, had and done in the cause of Richmond Guano Company, as plaintiff, and Boston Oil Mill Company, as defendant, Seaboard Air Line Railway Company and L. R. Goulder, garnishees, from the initiation of said suit to the conclusion thereof, marks the same Exhibit A and makes the same a part of this plea, as if specially set out herein. And the defendant avers that the said circuit court of said city of Richmond, Va., was a court of competent jurisdiction to entertain, try,

and dispose of said suit, and had jurisdiction of the parties and of the subject-matter involved in said suit, and, at the time of the institution of said suit, and the rendition and entry of judgment therein, there was of force in said state of Virginia, as a part of the laws thereof, the following laws, to wit:

"An act to amend and re-enact section 2959 of the Code of Virginia in reference to attachments. Approved February 20, 1892.

"1. Be it enacted by the General Assembly of Virginia, that section 2959 of chapter 141 of the Code of Virginia be amended and re-enacted so as to read as follows:

"Sec. 2959. When and for What Attachment may be Sued out; By Whom Issued; The Affidavit Required; Who may Make It; Grounds for Attachment.—If at the time of, or after the institution of any action at law for the recovery of specific personal property, or a debt, or damages for the breach of a contract, express or implied, or damages for a wrong, the plaintiff, his agent or attorney, shall make affidavit, stating that the plaintiff's claim is believed to be just, and where the action is to recover specific personal property, the nature and, according to the affiant's belief, the value of such property, and the probable amount of damages the plaintiff will recover for the detention thereof, and where it is to recover a debt or damages for the breach of a contract, express or implied, or damages for a wrong, a certain sum which (at the least) the affiant believes the plaintiff is entitled to or ought to recover, and stating also the existence, to the best of the affiant's belief, of one or more of the following grounds for attachment: That the defendant, or one of the defendants—

"First. Is a foreign corporation, or is not a resident of this state, and has estate or debts owing to said defendant within the county or corporation in which the action is, or is sued with a defendant residing therein, or that the defendant, being a nonresident of this state, is entitled to the benefit of any lien, legal or equitable, on property, real or personal, within the county or corporation in which the action is, and the word estate, as herein used, shall include all rights of interests of a pecuniary nature which can be protected, enforced, or proceeded against in courts of law or equity; but this provision as to equitable estates and interests so far as amendatory of existing laws shall not apply to attachments sued out before the passage of this act. This section, as so enlarged, shall come under the provisions of section 2964, concerning attachments in equity; or,

"Second. Is removing or about to remove out of this estate, with intent to change his domicile, or,

"Third. Is removing, intends to remove, or has removed the specific property sued for, or his own estate, or the proceeds of the sale of his property, or a material part of such estate or proceeds, but of this state, so that process of execution on a judgment, when obtained in said action, will be unavailing; or,

"Fourth. Is converting, or is about to convert, or has converted, his property of whatever kind, or some part thereof, into money, securities, or evidences of debt, with intent to hinder, delay, or defraud his creditors; or,

"Fifth. Has assigned or disposed of, or is about to assign or dispose of, his estate, or some part thereof, with intent to hinder, delay, or defraud his creditors: In any such case the clerk of the court in which the action is, shall issue an attachment as the case may require.

"2. This act shall be in force from its passage."

"An act to amend and re-enact section 2967 of The Code of Virginia, as amended by an act approved February 19, 1904, in relation to attachments. Approved March 12, 1908.

"1. Be it enacted by the General assembly of Virginia, that section 2967 of the Code of Virginia, as amended by an act approved February the 19th, 1904, be amended and re-enacted as made to read as follows:

"Sec. 2967. On What Estate Attachment may be Levied; How Debts, et Cetera, Attached; How Levy Made; How, When Real Estate is Attached; How Attachments Served.—Every attachment (except where it is sued out specifically against specified property) may be levied on any estate, real or personal, or when it is against a non-resident or absconding debtor, any remainder, whether vested or contingent, of the defendant, or so much thereof as is sufficient to pay the amount for which it issues, and may be levied upon any estate of the defendant, whether the same be in the county or corporation in which the attachment issued, or in any other, either by the officer of the county or corporation wherein the attachment issued, or by the officer of the county or corporation where the estate is; and when levied on a contingent remainder, the said contingent remainder shall not be sold until it becomes vested, but the decree or judgment ascertaining the amount due the plaintiff may be docketed as other liens are docketed, and shall be a lien only on the property levied on. The plaintiff, his agent or attorney may, by an endorsement on the attachment at the time it is issued, or in writing at any time before the return day thereof, designate any person as being indebted to, or having in his possession effects of, the defendant or one of the defendants; and in such case the officer issuing the attachment shall make as many copies thereof as there are persons designated with an endorsement on each copy that the person so designated is required to appear at the term of the court to which the attachment is returnable, if the same be returnable to a term, or to the first term of the court next after the return day of the attachment, if the same be returnable to a rule day thereof, and disclose on oath in what sum he is indebted to the defendant, and what effects of the defendant he has in his hands. It shall be sufficiently levied, if sued out against specified property, by serving the attachment on the defendant, or other person having possession of such property; in every other case, by serving the attachment on such persons as may be designated by the plaintiff as aforesaid; and where the defendant is in possession, by service of the attachment on him; and as to real estate, by such estate being mentioned and described in an endorsement on such attachment, made by the officer to whom it is delivered for service, to the following effect: 'Levied on the following real estate of the defendant (A. B. or A. B. and C. D.), to wit: (Here describe the estate), this the —— day of ——, E. F., Sheriff (or other officer)' and by serv-

ice of the attachment on the person, if any, in possession of such estate. The attachment in every case may be served as a notice is required to be served by section 3207."

### Extracts from Code of Virginia.

"Sec. 2971. Lien of Attachment.—The plaintiff shall have a lien from the time of the levying of such attachment, or serving a copy thereof as aforesaid, upon the personal property of the defendant against whom the claim is, when the same is in his possession, and upon the personal property, choses in action, and other securities of such defendant in the hands of, or owing by such garnishee on whom it is so served; and on any real estate mentioned in such an endorsement by the officer on the attachment or summons as is prescribed by section 2967, from the suing out of the same."

"Sec. 2976. Proceedings against Garnishee for Debts, etc., Admitted to be Due. When Debtor may Claim Exemption out of Amount Due.—When any garnishee shall appear, he shall be examined on oath. If it appear, on such examination, or by his answer to a bill in equity, that at the time of the service of the attachment he was indebted to the defendant against whom the claim is, or had in his possession or control any goods, chattels, money, securities, or other effects belonging to the said defendant, the court may order him to pay the amount so owing by him, and to deliver such effects to such person as it may appoint as receiver; or such garnishee, with the leave of the court, may give bond, with sufficient surety, payable to such person, and in such penalty as the court shall prescribe, with condition to pay the amount owing by him, and have such effects forthcoming, at such time and place as the court may thereafter require, but the judgment debtor, if a householder or head of a family, may claim that the amount so found owing from the garnishee shall be exempt from the payment of the debt to the judgment creditor; and if it shall appear that the said judgment debtor has not set apart and held as exempt in other estate the amount of exemption to which he is entitled, then the court shall render a judgment against the garnishee only for the excess, if any, beyond the exemption to which the judgment debtor is entitled."

"Sec. 2984. How and When Claims of Other Persons to the Property Tried.—Any person may file his petition, at any time before the property attached as the estate of a defendant is sold, or the proceeds of sale paid to the plaintiff under the decree or judgment, disputing the validity of the plaintiff's attachment thereon, or stating a claim thereto, or an interest in or lien on the same, under any other attachment or otherwise, and its nature, and upon giving security for costs, the court, without any other pleading, shall inquire into such claim, or, if either party demand it, impanel a jury for that purpose, and if it be found that the petitioner has title to, or a lien on, or any interest in, such property, or its proceeds, the court shall make such order as may be necessary to protect his rights, the costs of which inquiry shall be paid by either party, at the discretion of the court."

"Sec. 2986. When and How Debtor may have Case Reheard. Protection of Purchaser.—If a defendant, against whom, on publication, judgment or decree is rendered under any such attachment, or his personal representative, shall return to or appear openly in this state, he may, within one year after a copy of such judgment or decree shall be served on him at the instance of the plaintiff, or within five years from the date of the decree or judgment, if he be not so served, petition to have the proceedings reheard. On giving security for costs, he shall be admitted to make defense against such judgment or decree, as if he had appeared in the case before the same was rendered, except that the title of any bona fide purchaser to any property, real or personal, sold under such attachment, shall not be brought in question or impeached. But this section shall not apply to any case in which the petitioner, or his decedent, was served with a copy of the attachment, or with process in the suit wherein it issued, more than sixty days before the date of the judgment or decree, or to any case in which he appeared and made defense.

"Sec. 2987. Order of Court on Rehearing or New Trial. Restitution to Defendant.—On any rehearing or new trial had under the preceding section, the court may order the plaintiff in the original suit to restore any money, paid to him under such judgment or decree, to the heir or representative of such defendant as the same may be the proceeds of real or personal estate, and enter a judgment or decree therefor against him, or it may confirm the former judgment or decree; and in either case adjudge the costs to the prevailing party."

"Sec. 2998. The Proceeding, When Defendant Disclaims Interest in the Subject. How Right of Third Party Tried.—Upon affidavit of a defendant in any action that he claims no interest in the subject matter of the suit, but that some third party has a claim thereto, and that he does not collude with such third party, but is ready to pay or dispose of the subject matter of the action as the court may direct, the court may make an order requiring such third party to appear and state the nature of his claim, and maintain or relinquish it, and in the meantime stay the proceedings in such action. If such third party, on being served with such order, shall not appear, the court may, on proof of plaintiff's right, render judgment for him, and declare such third party to be forever barred of any claim in respect of the subject matter, either against the plaintiff or the original defendant, or his personal representative. If such third party, on being so served, shall appear, the court shall allow him to make himself defendant in the action, and, either in said action or otherwise, cause such issue or issues to be tried as it may prescribe, and may direct which party shall be considered the plaintiff in the issues, and shall give judgment upon the verdict rendered on such trial, or, if a jury be waived by the parties interested, shall determine their claims in a summary way."

"An act to amend and re-enact section 3231 of the Code of Virginia. Approved December 10, 1903.

"1. Be it enacted by the General Assembly of Virginia, that section 3231 of the Code of Virginia be amended and re-enacted so as to read as follows:

"Sec. 3231. What Order of Publication to State and Require; How Published and Posted; When Publication in Newspaper Dispensed with.

—Every order of publication shall give the abbreviated style of the suit, state briefly its object, and require the defendants against whom it is entered, or the unknown parties, to appear within fifteen days after due publication thereof and do what is necessary to protect their interests. It shall be published once a week for four successive weeks in such newspaper as the court may prescribe, or, if none be so prescribed, as the clerk may direct, and shall be posted by the clerk, at the front door of the courthouse of the county 'or corporation wherein the court is held, on or before the next succeeding rule day after it is entered; and the clerk shall file a certificate of the fact in the papers of the case; but the court, or the judge thereof in vacation, may, in any case, if the court or judge deem it proper, dispense with such publication in a newspaper.

"2. This act shall be in force from its passage."

"An act to amend and re-enact section 3232 of the Code of Virginia in relation to orders of publication and the publication of copies of process and notices. Approved February 27, 1906.

"1. Be it enacted by the General Assembly of Virginia, that section 3232 of the Code of Virginia be amended and re-enacted so ·as to read as follows:

"Sec. 3232. Within What Time after Publication Case Tried or Heard; No Other Publication Required Unless Ordered by Court; When Notice, and of What to be Given to Counsel; Provision for Personal Service, of Process, Etcetera, on Non-Residents; Effect Thereof, the Return to be Made in Such Case. When such order shall have been so executed, or when a copy of any process, or of a notice beginning any action, shall have been published as provided by any section of this chapter, if the defendants against whom it is entered, or published, or the unknown parties, shall not appear within fifteen days after the completion of the execution of such order, or the expiration of the four weeks required for the completion of such publication, the case may be tried or heard as to them, and no other publication, or notice, shall be thereafter required in any proceeding in court, or before a commissioner, or for the purpose of taking depositions, unless specially ordered by the court as to such defendants or unknown parties; but if they shall be represented by counsel residing in this state, of record or known to the plaintiff, reasonable notice of any proceeding before a commissioner, or of the taking of depositions, shall be given to such counsel, or any of them, if there be more than one. Personal service of the summons, scire facias, or notice, may be made by any person not a party to or otherwise interested in the subject matter in controversy, on a non-resident defendant out of this state, which service shall have the same effect, and no other as an order of publication duly executed, or the publication of a copy of process or of notice under this chapter, as the case may be. In such case the return must be made under oath, and must show the time and place of such service, and that the defendant so served is a nonresident of this state. Upon any trial or hearing under this section such judgment, decree or order shall be entered as may appear just."

"An act to amend and re-enact section 3068 and 3082, and to repeal section 3079 of the Code of Virginia, relating to courts of the City of Richmond. Approved December 12. 1903.

"1. Be it enacted by the General Assembly of Virginia, that sections 3068 and 3082 of the Code of Virginia be amended and re-enacted so as to read as follows:

"Sec. 3068. Courts of the City of Richmond; Their Judges; How Elected.—There shall be for the city of Richmond the following courts:

"1. A hustings court;

"2. A court of probate and record, to be called the chancery court of the city of Richmond;

"3. The law and equity court of the city of Richmond;

"4. The circuit court of the city of Richmond.

"The hustings court, the chancery court, and the law and equity court shall be held by judges chosen by the joint vote of the two houses of the General Assembly, who, when chosen, shall possess the same qualifications as judges of the Supreme Court of Appeals, and shall, during their continuance in office, reside within the jurisdiction of the courts, respectively, over which they preside.

"The circuit court of said city shall be held by the judge of the Tenth circuit.

"Sec. 3082. Clerks of Said Courts; How Elected, and so Forth; Their Fees; Special Compensation of Clerk of Hustings Court.— There shall be a clerk of the said hustings court, of said chancery court and of said law and equity court, each of whom shall be elected by the qualified voters of said city on Tuesday after the first Monday in November for terms of eight years. The terms of the said clerks now in office, or their successors, shall continue until the first day of February, 1907; and their successors shall be elected on Tuesday after the first Monday in .November, 1905, and every eight years thereafter. The terms of the clerks so elected shall begin on the first day of February of the second year following the year of their election. They shall each receive the same fees and emoluments that are allowed by law to clerks of circuit courts.

"The clerk of said hustings court shall also receive out of the treasury of the city of Richmond, for his services to the public of said city, such sum as the judge may allow, not exceeding the sum of eighteen hundred dollars in one year, and he shall be allowed the sum of one thousand dollars a year for public services rendered the commonwealth, payable in monthly installments, from the public treasury out of any money not otherwise appropriated.

"2. Be it further enacted, that section 3079 of the Code of Virginia be, and the same is hereby, repealed.

"3. This act shall be in force on and after February first, 1904."

"An act to amend and re-enact section 3058 of the Code of Virginia, as amended and re-enacted by an act of the General Assembly, approved on the 26th day of December, 1903, so as to give the courts of equity jurisdiction to remove clouds from title to real estate where the complainant is not in possession, or where the complainant has the equitable right to the legal title. Approved February 20, 1912.

"1. Be it enacted by the General Assembly of Virginia, that section 3058 of the Code of Vir-

ginia be amended and re-enacted so as to read as follows:

"Sec. 3058. The circuit and corporation courts shall have jurisdiction of proceedings by quo warranto, or information in the nature of quo warranto, and to issue writs of mandamus, prohibition and certiorari, to all inferior tribunals created or existing under the laws of this state, and to issue writs of mandamus in all matters or proceedings arising from or pertaining to the action of the board of supervisors of the several counties for which said courts are respectively held, or other cases in which it may be necessary to prevent the failure of justice, and in which mandamus may issue according to the principles of common law. They shall have jurisdiction of all cases, both civil and criminal, which are existing or pending in the respective county courts for the counties on the 31st day of January, 1904, and shall have appellate jurisdiction in all cases, civil and criminal, where an appeal may, as provided by law, be taken or allowed by the said court or the judge thereof, from or to the judgment or proceedings of any inferior tribunal.

" 'They shall have original and general jurisdiction of all cases in chancery and civil cases at law, except cases at law to recover personal property, or money, not of greater value than twenty dollars, exclusive of interest, except such cases as are assigned to some other tribunal; and also in all cases for the recovery of fees, penalties, or any cases involving the right to levy and collect tolls or taxes, or involving the validity of an ordinance or by-law of any corporation; and also of all cases, civil or criminal, where an appeal may be had to the Supreme Court of Appeals.'

"And whenever the circuit and corporation courts have jurisdiction on the chancery side to remove clouds from title to real estate by bill quia timet, in case the party filing such bill were in possession of such real estate, such courts shall have jurisdiction to maintain such a bill whether the party filing the same be in possession of such real estate or not. And any suit now pending to remove clouds from title, in which a final decree has not been entered, which, but for this act, would be dismissed for want of jurisdiction, shall be retained by the court and proceeded in as if brought after this act.

"And any person who has an equitable title to real estate and the right to the legal title, shall have the right to file such a bill as mentioned above, whether such person be in possession or not, and such bill shall be maintained and heard, and the court shall give all such relief to the parties to such bill as they may be legally or equitably entitled to: Provided, however, that in any proceeding brought under this act, if any issue be made, which, but for this act, would have entitled any party to a trial by jury, the court, upon motion of such party, shall direct such issue to be tried by a jury, as an issue out of chancery, and, on the trial of such issue, the same rules of evidence and the same presumptions shall apply as if the issue were being tried in an action at law, and the verdict shall have the same effect as verdicts in ordinary issues out of chancery.

"They shall also have original jurisdiction of all presentments, informations and indictments for felonies, and for such misdemeanors as may be made cognizable therein by any statute, and of the proceedings therein.

"They shall have appellate jurisdiction of all cases, civil and criminal, where an appeal, writ of error or supersedeas may, as provided by law, be taken to or allowed by the said courts, or the judges thereof, from or to the judgment or proceedings of any inferior tribunal. They shall have jurisdiction of all other matters, civil and criminal, made cognizable therein by law, and where a motion to recover money is allowed in said courts other than under section 3211, they may hear and determine the same, although it be to recover less than twenty dollars: Provided, however, that no circuit court shall have any original or appellate jurisdiction in criminal cases arising within the territorial limits of any city wherein there is established by law a corporation or hustings court."

Further answering in said cause, the defendant says that this suit is for the recovery of the value of one car of cotton seed meal, shipped by the Boston Oil Mill Company, from Dothan, Ala., on July 13, 1917, to its order, at Richmond, Va., upon a bill of lading issued by defendant upon which lading it was directed that the Richmond Guano Company, of Richmond, Va., be notified, to which said bill of lading was attached a sight draft on the said Richmond Guano Company, which lading and draft was indorsed to the plaintiff bank and by plaintiff bank forwarded through its banking correspondents for collection; that said car of meal was intended for, and had been sold to, said Richmond Guano Company, by said Boston Oil Mill Company, and was transported over the lines of defendant to the connecting lines of the Seaboard Air Line Railway Company, and by the latter company transported to the city of Richmond. Va., and there delivered to the said Richmond Guano Company, for whom it was intended and to whom it had been sold as aforesaid; that said draft and lading forwarded as aforesaid for collection was delayed in reaching said city of Richmond, Va., and, to effect prompt delivery of said car of meal, the said Seaboard Air Line Railway Company allowed the said Richmond Guano Company to deposit in cash with said railway company the invoice price of said meal, to wit, $1,465.57, to protect said draft when it should arrive and to protect the said railway company in the delivery thereof, and, upon deposit of the said sum with and for the purpose aforesaid, the said Seaboard Air Line Railway Company delivered said car of meal to said Richmond Guano Company, and the defendant avers that plaintiff, with knowledge that said money had been deposited with said Seaboard Air Line Railway Company and the purpose for which it was so deposited, and that said car of meal had been delivered to said Richmond Guano Company without payment of said draft and surrender of said lading, and being on notice and in possession of the facts

in this plea averred in reference to said delivery and deposit of said money, ratified the breach of the contract of shipment complained of, and, as alleged in said complaint, by claiming the said sum of money, to wit, $1,-465.57, so deposited with said Seaboard Air Line Railway Company, and drew and had presented its draft in its favor for said sum of money on said Seaboard Air Line Railway Company, and thereby ratified the act of Seaboard Air Line Railway Company, in making delivery of said car of meal and accepting said deposit of said money without payment, of said draft and surrender of said lading as aforesaid.

Plea 4 is similar to plea 2.

Attached to pleas 2 and 4 were copies of all the proceedings, beginning with the summons and attachment and ending with the judgment in the Virginia court.

Reid & Doster, of Dothan, for appellant.

Counsel referred to the sections of the Virginia Code as set out in said plea and insists that the money, being in the city of Richmond at the time of the issuance and service of the writ, was within the jurisdiction and control of the court there. 29 Grat. (Va.) 502; 3 Grat. (Va.) 98; 6 Grat. (Va.) 442; 77 Va. 535; 95 Va. 515, 28 S. E. 888, 40 L. R. A. 237; 130 Mass. 184. It is a question of priority, and not superiority of jurisdiction. 2 Wade on Attachments, pp. 220, 335; 198 U. S. 215, 25 Sup. Ct. 625, 49 L. Ed. 1023, 3 Ann. Cas. 1084; 20 U. S. (7 Wheat.) 176, 5 L. Ed. 425. The judgment of that court cannot now be attacked collaterally. 160 U. S. 542, 16 Sup. Ct. 366, 40 L. Ed. 525; 240 U. S. 620, 36 Sup. Ct. 475, 60 L. Ed. 829; 243 U. S. 269, 37 Sup. Ct. 282, 61 L. Ed. 713, L. R. A. 1917F, 1159.

Farmer, Merrill & Farmer, of Dothan, for appellee.

The judgment attempted to be set out does not adjudicate any question between the Dothan National Bank and the Central of Georgia Railroad, and is not a valid judgment binding this claimant. 101 Ala. 187, 13 South. 43, 46 Am. St. Rep. 117; 132 Ala. 638, 32 South. 649; 112 Ala. 247, 20 South. 583; 125 Ala. 442, 28 South. 380; 129 Ala. 283, 29 South. 548; 124 Ala. 596, 26 South. 918; 123 Ala. 227, 26 South. 165; 99 Ala. 519, 13 South. 500; 122 Ala. 149, 25 South. 697, 82 Am. St. Rep. 68; 126 Ala. 268, 28 South. 640. The pleas do not show that the Virginia court acquired jurisdiction of the Central of Georgia Railroad, the Boston Oil Mill Company, nor of the Dothan National Bank, nor of the Seaboard Air Line Railway Company. 201 Ala. 454, 78 South. 832; 118 Ala. 477, 23 South. 825, 41 L. R. A. 331, 72 Am. St. Rep. 181; 195 Ala. 150, 70 South. 91; 160 Ala. 217, 49 South. 89, 135 Am. St.

Rep. 93; 159 Ala. 418, 49 South. 83. Plea 3 does not show any ratification of the conversion of the funds by the Seaboard Air Line Railway. 170 Ala. 617, 54 South. 168; 147 Ala. 636, 41 South. 809; 163 Ala. 304, 50 South. 284; 146 Ala. 216, 41 South. 12, 8 L. R. A. (N. S.) 448, 119 Am. St. Rep. 19. 118 Va. 628, 88 S. E. 95.

ANDERSON, C. J. [1] Pretermitting other reasons and conceding, only for the purpose of deciding this case, that the Virginia judgment, set out in the defendant's pleas, was valid and binding upon this plaintiff as to the matters thereby adjudicated; yet the pleas fail to show that the claim or demand in the present suit was involved and adjudicated in the Virginia suit, and the action of the trial court, in sustaining the plaintiff's demurrer to the defendant's special pleas, can be affirmed on this ground alone.

"It is unquestionably the law that a former judgment is a bar or estoppel against a prosecution upon the same claim or demand between the same parties, and concludes them, not only as to what was offered to maintain or defeat the claim or demand, but as to any other admissible matter which might have been offered. But where the second action between the same parties is upon a different claim, the demand in the prior action operates as an estoppel only as to matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. This distinction was drawn and clearly set forth by the rule declared in the case of Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195, and which has been several times approved and quoted by this court. Crowder v. Mining Co., 127 Ala. 254, 29 South. 847; Commissioners' Court v. Tuscaloosa, 180 Ala. 479, 61 South. 431. See, also, authorities there cited." Irby v. Commercial National Bank, 204 Ala. 420, 85 South. 509.

The present action is against this defendant, two counts for a breach of the contract of shipment and one for a conversion of the goods by its connecting carrier, for whose acts and conduct it was responsible, the plaintiff being the indorsee and holder of the bill of lading with draft attached, and therefore the legal owner of the goods, and which could have been legally delivered only to the holder of said bill of lading, and as to which the Richmond Guano Company could have become entitled only upon payment of the draft attached thereto. The delivery of the shipment to the Richmond Guano Company by the final carrier, the Seaboard Company, without the presentation and surrender of the bill of lading, was a breach of the contract of shipment as well as a conversion of the goods and the acceptance, by it, of a cash indemnity could not operate to preclude this plaintiff against its right to maintain the present action in the absence of a waiver of same by ratifying the conduct of the Seaboard Company.

[2] The pleas do not show a ratification by the plaintiff, and it was not therefore compelled, by the unwarranted conduct of the Seaboard Company, to waive its rights under the contract of shipment, by resorting to a foreign jurisdiction to litigate over a fund, which it did not and does not now claim. Of course, if this plaintiff had appeared in the Virginia court and claimed the fund, this would no doubt have operated as a ratification of the conduct of the Seaboard Company as well as a waiver of the breach of the contract and the conversion, and a judgment rendered by the Virginia court, under such circumstances, would conclude the plaintiff against the right to maintain the present action. Just as we held would have been the result had the bank in the Irby Case, supra, introduced its land mortgage in the detinue suit for the purpose of augmenting the mortgage indebtedness against the personal property. But as to this, it had an option, and, not having seen fit to inject the amount due, under the land mortgage, into the detinue suit, the said land mortgage did not become a part of the claim or demand that was adjudicated in said detinue suit. Here this plaintiff had the option of appearing in the Virginia court and propound and litigate its claim to the fund in question, and, had it done so, it would have waived the breach of the contract and the conversion, and the judgment rendered would no doubt conclude against the right to maintain the present suit. But the fact that it did not appear, or did not institute a claim or contest for the fund had it appeared, shows that the claim or demand here sued on was not included in the claim or demand adjudicated by the Virginia judgment.

[3] The fact that the plaintiff had its draft presented for payment, before or after the unauthorized delivery of the shipment, or whether with or without notice of said delivery, did not operate as a ratification of the conduct of the Seaboard Company so as to preclude it from maintaining the present action. The plaintiff had the right to insist upon the payment of its draft, regardless of the conduct of the Seaboard Company, and to maintain a suit for a breach of the contract of shipment, upon the nonpayment of same, for the failure to deliver the shipment upon presentation of the bill of lading. A. C. L. Co. v. Dalberg, 170 Ala. 617, 54 South. 168; Baker v. Hutchinson, 147 Ala. 636, 41 South. 809; Dixie v. Harrison, 163 Ala. 304, 50 South. 284; Pelham v. Chattahoochee Co., 146 Ala. 216, 41 South. 12, 8 L. R. A. (N. S.) 448, 119 Am. St. Rep. 19; Kewanee Co. v. Norfolk Co., 118 Va. 628, 88 S. E. 95.

The circuit court did not err in sustaining the plaintiff's demurrer to defendant's special pleas 2, 3, and 4, and the judgment is affirmed.

Affirmed.

SAYRE, GARDNER, and MILLER, JJ., concur.