27 So.2d 584

**JEFFERSON COUNTY et al. v. CITY OF BIRMINGHAM.**

6 Div. 402.

Supreme Court of Alabama.

Jan. 17, 1946.

Rehearing Granted June 27, 1946.

Further Rehearing Denied Oct. 24, 1946.

Harvey Deramus, of Birmingham, for appellants.

Jas. H. Willis, of Birmingham, for appellee.

On Rehearing.

LAWSON, Justice.

Appellee, the City of Birmingham (hereinafter referred to as the complainant), filed a bill in equity in the Circuit Court of Jefferson County, sitting in equity, against appellants, the County of Jefferson, the members of its County Commission, and the County Treasurer (hereinafter referred to as the respondents). To the bill as amended the respondents separately and severally demurred. From a decree overruling the demurrer the respondents have appealed to this court.

The main purpose and object of the complainant's bill is to recover of Jefferson County the sum of $95,898.07, which complainant asserts is its portion of tax funds garnered by the county authorities. The two legislative enactments upon which the complainant primarily bases its right to recover have been the cause of previous litigation between these parties. At least four cases have been heretofore before this court wherein these legislative enactments have precipitated litigation between the City of Birmingham and Jefferson County. Board of Revenue of Jefferson County v. State ex rel. City of Birmingham, 172 Ala. 138, 54 So. 757; Board of Revenue of Jefferson County v. City of Birmingham, 205 Ala. 320, 88 So. 18; Board of Revenue of Jefferson County v. City of Birmingham, 205 Ala. 338, 88 So. 16; Jefferson County v. City of Birmingham, 221 Ala. 476, 129 So. 48.

We deem it advisable to set out here the pertinent provisions of such enactments. Act No. 395, H. 806, approved February 17, 1885, Acts of Alabama, 1884-85, p. 709, which will be hereinafter referred to as the 1885 local act, provides in § 1 thereof as follows: "That the Court of County Commissioners of Jefferson County shall levy a special tax of one-tenth of one per cent. on the value of all taxable property in said county as assessed for revenue for the State, to be applied to the working of public roads in said county, as hereinafter provided; *Provided, that no levy shall be made by said court, in any one year, exceeding one-half of one per cent. for the ordinary county purposes, not including necessary* public buildings or bridges." (Emphasis supplied.) Section 2 relates to the making of contracts for the construction and working of the roads of the county. Section 3 provides for the hiring of convicts to contractors. Section 4 requires contractors to give bond with sufficient sureties for the performance of the contract. Section 5 provides that the work shall be done under the supervision and direction of a civil engineer or engineers. Section 6 provides for the payment of expenses and liabilities required or incurred under the act out of moneys collected thereunder. Section 7 relates to road duty by persons liable therefor.

The other provision upon which complainant bases its right to recover is § 130, Title 12, Code of 1940. It will be hereinafter referred to as the apportionment statute. It is as follows: "The courts of county commissioners and boards of revenue, where there is levied a road tax, general or special, or where by the tax levy a portion of the tax is levied for or devoted to the purpose of constructing, repairing or maintaining roads and highways of any description in the county *except the special tax authorized by subdivision (a) of section 215 of the constitution,* shall pay over each year to each municipality therein one-half of the money collected on such road tax on the property located in such municipality." (Emphasis supplied.) The above-quoted section of the Code is in all respects here material identical with § 2

of Act No. 183, H. 210, approved August 26, 1909, General and Local Acts, Special Session 1909, pp. 303, 304, except the italicized portion, which first appeared in § 6774, Code of 1923, and no doubt was incorporated therein as a result of several decisions of this court. Commissioners' Court of Pike County v. City of Troy, 173 Ala. 442, 56 So. 131, 274, Ann.Cas.1914A, 771; Court of County Revenue of Franklin County v. Town of Russellville, 176 Ala. 609, 58 So. 253; Commissioners' Court of Tuscaloosa County v. State ex rel. City of Tuscaloosa, 180 Ala. 479, 61 So. 431; State ex rel. City of Tuskegee v. Macon County, 190 Ala. 631, 67 So. 394; State ex rel. Town of Marion v. Commissioners' Court of Perry County, 187 Ala. 643, 65 So. 998; City of Demopolis v. Marengo County, 195 Ala. 214, 70 So. 275.

At the time the 1885 local act was enacted the constitutional provision relating to the levying of property taxes by counties was § 5 of Article 11 of the Constitution of 1875, which is as follows: "No county in this state shall be authorized to levy a larger rate of taxation, in any one year, on the value of the taxable property therein, than one-half of one per centum [hereafter referred to as the first clause of § 5 of Article 11 of the Constitution of 1875]; provided, that to pay debts existing at the ratification of this constitution, an additional rate of one-fourth of one per centum may be levied and collected which shall be exclusively appropriated to the payment of such debts or the interest thereon [hereafter referred to as the first proviso of § 5 of Article 11 of the Constitution of 1875]; provided, further, that to pay any debt or liability now existing against any county, incurred for the erection of the necessary public buildings or other ordinary county purposes, or that may hereafter be created for the erection of necessary public buildings or bridges, any county may levy and collect such special taxes as may have been or may hereafter be authorized by law, which taxes so levied and collected shall be applied exclusively to the purposes for which the same were so levied and collected [hereafter referred to as the second proviso of § 5 of Article 11 of the Constitution of 1875]."

Section 215 of the Constitution of 1901 is the present constitutional provision relating to the levying of property taxes by counties. It is as follows: "No county in this state shall be authorized to levy a greater rate of taxation in any one year on the value of the taxable property there-in than one-half of one per centum [hereafter referred to as the first clause of § 215 of the Constitution of 1901]; provided, that to pay debts existing on the sixth day of December, eighteen hundred and seventy-five, an additional rate of one-fourth of one per centum may be levied and collected which shall be appropriated exclusively to the payment of such debts and the interest thereon [hereafter referred to as the first proviso of § 215 of the Constitution of 1901]; provided, further, that to pay any debt or liability now existing against any county, incurred for the erection, construction, or maintenance of the necessary public buildings or bridges, or that may hereafter be created for the erection of necessary public buildings, bridges, or roads, (a) any county may levy and collect such special taxes, not to exceed one-fourth of one per centum, as may have been or may hereafter be authorized by law, which taxes so levied and collected shall be applied exclusively to the purposes for which the same were so levied and collected [hereafter referred to as the second proviso of § 215 of the Constitution of 1901]."

In the original opinion in this case, written for the court by Mr. Justice Brown and concurred in by all the Justices, we held that the lower court erred in overruling the demurrers of respondents on the ground that the bill was without equity in that the 1885 local act, supra, which was necessary to complainant's right to relief, was unconstitutional.

We came to the conclusion in the original opinion that the Legislature in the enactment of the 1885 local act, supra, rested said act on the second proviso of § 5 of Article 11 of the Constitution of 1875 and in view of that conclusion held that the said local act was unconstitutional and void in that the Legislature was without power to authorize the levy of a special tax for road purposes under the said second proviso of § 5 of Article 11 of the Constitution of 1875. County of Montgomery v. City of Montgomery, 190 Ala. 366, 67 So. 311.

Upon further consideration we are of the opinion that the tax, which the Legislature in § 1 of the 1885 local act, supra, required the governing body of Jefferson County to levy, was intended to be levied as a part of the one-half of one per centum levy which the Legislature may authorize counties to make under the first clause of § 5, Article 11, Constitution of 1875. We think the proviso of § 1 of the

1885 local act, supra, clearly shows that such was the intention of the Legislature. True, the tax was designated as a "special" tax, but that fact alone does not indicate that the Legislature intended for the levy to be in addition to the one-half of one per cent. levy in view of the proviso above referred to. The construction here placed upon the act is in accord with the previous decisions of this court. In the case of Keene v. Jefferson County et al., 135 Ala. 465, 33 So. 435, 437, this court had under consideration a local act affecting Jefferson County, see Acts of 1900–1901, p. 1722, which provided for the levy of a "special" tax of one-twentieth of one per cent. for the use of the sanitary fund of the county. Section 11 of that act was in most material respects similar to § 1 of the 1885 local act, supra. Said § 11 of the 1901 act, supra, contained the following provision: "Provided, however, that no levy shall be made by said board of revenue in any one year exceeding one-half of one per cent for the ordinary county purposes, but not including necessary public buildings or bridges." This court construed the proviso as follows: "Here wa. a limitation on the power of the board, not to exceed one-half of 1 per cent. for general county purposes, including the one-twentieth of one per cent. for sanitary purposes, and this brings the levy clearly within constitutional restrictions."

The provisions of § 1 of the 1885 local act, supra, were held to be mandatory in the case of Board of Revenue of Jefferson County v. City of Birmingham, 205 Ala. 320, 88 So. 18, and in the case between the same parties reported in 205 Ala. 338, 88 So. 16. The effect of the decisions in those cases is to hold that the tax must be levied as a part of the one-half of one per cent. levy. In the case of County of Montgomery v. City of Montgomery, supra, the history of the apportionment statute was discussed and the existence of the local act of 1885, supra, together with other local acts was assigned as one of the reasons for the enactment of the said apportionment statute. The said 1885 local act, supra, was there considered as requiring the road tax to be levied as a part of the one-half of one per cent. levy.

We conclude, therefore, that we were in error in the original opinion in holding that the said 1885 local act, supra, was violative of § 5, Article 11 of the Constitution of 1875 on the ground that it required the levy of a special road tax in addition to the one-half of one per cent. levy which the Legislature may authorize under the first clause of said section of the 1875 Constitution.

We also held in the original opinion that § 5, Article 11, Constitution of 1875, § 215, Constitution of 1901, was a grant of power to the counties to make levies within the limits fixed therein and that the Legislature was without power to direct and control the levying of taxes under said section. Based on that construction of § 5, Article 11, supra, we proceeded to hold that to construe the 1885 local act, supra, as being mandatory (as had theretofore been held) would. render it inconsistent with and repugnant to § 215 of the Constitution of 1901, thereby effecting its repeal by subdivision 1 of the schedule attached to and adopted with the Constitution of 1901.

■ Section 5, Article 11, Constitution of 1875, § 215, Constitution of 1901, is not a grant of power to the counties to levy taxes within the limits therein prescribed and we erred in so holding. It is a limitation upon the power of the Legislature to authorize counties to levy taxes.

■ Counties have no inherent power of taxation. Phoenix Carpet Co. v. State, 118 Ala. 143, 22 So. 627, 72 Am.St.Rep. 143; and under the Constitutions of this state preceding that of 1875 the Legislature had unlimited power over the subject of taxation by counties. State ex rel. Lott v. Brewer, 64 Ala. 287; Keene v. Jefferson County, supra.

One of the first cases to come before this court wherein the effect of Article 11 of the Constitution of 1875 was considered is that of Hare v. Kennerly, 83 Ala. 608, 3 So. 683, 685. That case involved a matter of municipal taxation but the. effect of §§ 4, 5 and 7 of Article 11 is considered. It was there said: "Municipalities can exercise no right of taxation, except such as may be vested in them by law. The constitution in no manner infringes upon this principle. It fully recognizes three classes of taxes on property, and three distinct systems of taxation: (1) State taxes, levied for state purposes, and commensurate with the entire limits of the state; (2) county taxes, levied on property and subjects of taxation in the county, for county purposes; and (3) municipal taxes, authorized by law to be levied on municipal subjects of taxation, for municipal purposes. Section 4 of article 11 of the constitution was clearly intended to limit the rate of taxation imposed for the first class;

section 5, the rate imposed for the second; and section 7, that imposed for the third. *We repeat that these several clauses are not grants of the power to levy taxes, but limitations upon that taxing power which has always been inherent in the state, and vested in the legislative branch of the state government, which is the depositary of all authority on the subject."* (Emphasis supplied.)

The case of State v. Street et al., 117 Ala. 203, 23 So. 807, 810, positively holds that § 5, Article 11 of the Constitution of 1875, is not a grant of power to counties but is a limitation upon the Legislature. It is perhaps the leading case on the subject. Members of the governing body of Marshall County had been indicted for refusing to comply with the terms of a local act approved February 18, 1897, Acts of Alabama, 1896–97, p. 1228. One section of that act provided that no part of the county revenues levied for general purposes should be used in building bridges, and required the county commissioners annually to levy a special tax not exceeding one-tenth of one per centum to be used in building and repairing bridges. It appears, therefore, that this section of the act was a legislative regulation of not only the first clause of § 5 of Article 11 of the Constitution of 1875, but was also a mandate from the Legislature that the county levy a tax for bridges under the second proviso of said § 5 of Article 11. Another section of the said local act affecting Marshall Coun. required the court of county commissioner annually to appropriate and set apart, out of the taxes levied for general purposes, "such sum as the condition of the county treasury will warrant, but in no case less than one-eighth of one per centum of the assessed valuation of the said county, which sum shall be part of the one-half of the one per centum authorized by law for county purposes." The receipts from the tax provided by the latter section were to constitute a road fund to be applied exclusively to the improvement of public roads.

The members of the governing body who had been indicted for non-compliance with the aforementioned provisions of the local act affecting Marshall County demurred to the indictment on the ground, among others, that the act violated § 5, Article 11 of the Constitution of 1875. The demurrer was sustained and the State appealed. On appeal Mr. Chief Justice Brickell wrote the opinion for the court. In his opinion he set out the argument advanced by counsel representing the indicted officials, which argument was in part as follows: "The constitution of the state (article 11, § 5) provides: 'No county in this state shall be authorized to levy a larger rate of taxation in any one year, on the value of the taxable property therein, than one-half of one per centum.' This is not only a limitation upon the taxing power of a county, but it is also a grant of a power of taxation to the extent of one-half of one per centum." The argument or contention of counsel above quoted in Mr. Chief Justice Brickell's opinion has proven to be embarrassing to Mr. Justice Haralson in the case of Birmingham Mineral Railroad Co. v. Tuscaloosa County, 137 Ala. 260, 34 So. 951, and it has likewise contributed to our erroneous holding in the original opinion in this case. Mr. Chief Justice Brickell in his opinion in State v. Street proceeds to refute and completely destroy the argument of counsel which he had set out in his opinion. In upholding both sections of the said local act affecting Marshall County, it was said: "The fifth section of the article [Article 11, Constitution of 1875] is devoted to county taxation, and the first clause prohibits the grant to a county of authority 'to levy a larger rate of taxation in any one year, on the value of the taxable property therein, than one-half of one per centum.' *The prohibition, by its terms, is a limitation or restraint of legislative power, and not of power residing in the county. Counties are involuntary political or civil divisions of the state, created by statute, to aid in the administration of government. Whatever of power they may possess, or whatever of duty may devolve upon them, originates in and is derived from legislation. They have no inherent power of taxation, nor are they by the constitution invested with such power. All the constitution contemplates is the legislative delegation of such power; and the statutes have delegated the power to the court of county commissioners the agency by which all the powers of the county are exercised. Code 1896,*

*§§ 958, 3985. A fallacy of the argument of counsel, fatal to it, lies in the supposition that the constitution grants to a county power of taxation, and that the power of taxation which legislation may delegate to them is in any proper sense a constitutional power. It is power derived from legislation, and may be withheld or changed or modified at legislative discretion, no element of contract with third persons intervening, compelling a levy and appropriation of taxes. Edwards v. Williamson, 70 Ala. 145."* (Emphasis supplied.)

Our conclusion in the original opinion that § 5 of Article 11 of the Constitution of 1875 was a grant of power to the counties was based in a large measure on a quotation from the case of Birmingham Mineral Railroad Co. v. Tuscaloosa County, supra, which in turn was taken from that part of the opinion in the case of State v. Street, supra, wherein the argument of counsel was set out. Although the opinion in Birmingham Mineral Railroad Co. v. Tuscaloosa County, supra, does contain a statement to the effect that § 5, Article 11 of the Constitution of 1875 is a grant of power to the counties as well as a limitation on the Legislature (the argument of counsel in State v. Street, supra), the conclusion reached in that case is definitely to' the effect that said § 5 of Article 11 is not a grant of power but a limitation upon the Legislature. The other case cited by us in our original opinion in this connection is Frederick v. Northern Alabama Railway Co., 130 Ala. 407, 30 So. 426. We need say nothing more than admit that that case is not apt authority for the position for which it was cited.

■ It is true that in a number of cases this court has held that the Legislature is powerless to direct that the product of a special road tax within and under the influence and control of the second proviso of § 215 of the Constitution of 1901 be paid over to municipalities for construction, maintenance, etc. of municipal streets. Commissioners' Court of Pike County v. City of Troy, supra; Court of County Revenue of Franklin County v. Town of Russellville, supra; Commissioners' Court of Tuscaloosa County v. State ex rel. City of Tuscaloosa, supra; State ex rel. City of Tuskegee v. Macon County, supra; State ex rel. Town of Marion v. Commissioners' Court of Perry County, supra; City of Demopolis v. Marengo County, supra. But this conclusion is based on the fact that the constitutional provision expressly says that levies so made are to be used for public roads and that the Legislature cannot override the Constitution and authorize the use of such tax funds for streets. A study of early cases will show that much has been written distinguishing between "public roads" and "streets." In other words, the second proviso of § 215 of the Constitution of 1901 is in effect a double limitation on the Legislature rather than a grant of power to the counties. The Legislature is limited not only as to the rate of taxation which it may authorize a county to levy for the purposes therein enumerated, but it is further limited as to the purposes for which such taxes may be used. This is not true in regard to the one-half of one per cent levy dealt with in the first clause of § 215, for there the Legislature is only limited as to the rate of taxation. It may designate the purposes for which taxes levied thereunder may be used. Board of Revenue of Jefferson County v. City of Birmingham, 205 Ala. 320, 88 So. 18, and the case between the same parties reported in 205 Ala. 338, 88 So. 16; Commissioners' Court of Calhoun County v. City of Anniston, 176 Ala. 605, 58 So. 252.

Because of the fact that we are now of the opinion that the said 1885 local act is not unconstitutional on any of the grounds stated in the original opinion, that opinion must be withdrawn and this opinion substituted therefor.

The bill, in substance, avers: That § 1 of the 1885 act, supra, makes it the mandatory duty of the governing body of Jefferson County annually to levy for public road purposes a special tax of one-tenth of one per centum on the value of the taxable property in said county, which said levy must be a part of the one-half of one per centum levy which the Legislature may authorize counties to make under the provisions of the first clause of § 215 of the Constitution of 1901; that the apportionment statute, supra, makes it the mandatory duty of the governing body of Jefferson

County, and of the treasurer thereof, annually to pay to complainant one-half of the amount of money collected from such levy on the property located within the corporate limits of the City of Birmingham (complainant).

In substance, the bill further alleges: That for a period of more than fifteen years prior to February, 1944, the governing body of Jefferson County complied with the mandatory duty imposed on them by § 1 of the 1885 act, and did levy for public road purposes a tax of one-tenth of one per centum on the value of the taxable property in said county, which levy was a part of the one-half of one per centum levy which the Legislature may authorize counties to make under the first clause of § 215 of the Constitution of 1901; that for a like period of time prior to February, 1944, the governing body of Jefferson County complied with the terms and provisions of the aforementioned apportionment statute.

The bill further alleges in substance: That the governing body of Jefferson County, in adopting its tax levy instrument, in February, 1944, did not comply with the mandatory provisions of § 1 of the 1885 local act, supra, in that it did not expressly levy as a part of the levy which the Legislature may authorize counties to make under the first clause of § 215 of the Constitution of 1901, a levy of one-tenth of one per cent for public road purposes; that the governing body of Jefferson County in the said tax levy instrument for the year 1944 not only ignored the mandatory provisions of § 1 of the 1885 local act but levied a tax of one-half of one per centum, the full amount which the Legislature could authorize it to levy under the first clause of § 215 of the Constitution of 1901; that said levy was in the following amounts and for the following purposes: forty cents per hundred (four-tenths of one per centum) for the general fund of the county, five cents per hundred (one-twentieth of one per centum) for public schools, and five cents per hundred (one-twentieth of one per centum) for sewer system account; that the act of the governing body in ignoring the mandatory provisions of § 1 of the 1885 local act was for the purpose, and as a means, contrivance and device, of de-

feating and rendering remediless complainant's rights under the said apportionment statute; that the effect of such purpose was to work a fraud upon complainant and its citizens.

It is further alleged in the bill in substance: That there is in the general fund of Jefferson County, in the keeping of the County Treasurer, the sum of $1,352,321.77 as a result of the said 1944 levy made under the first clause of § 215 of the Constitution of 1901; that if the governing body of Jefferson County had complied in its 1944 tax levy instrument with the mandatory provisions of the said 1885 local act that complainant, under the apportionment statute, supra, would be entitled to receive from respondents the sum of $95,898.07; that the aforesaid 1944 levy of forty cents per hundred (four-tenths of one per centum) for the general fund of the county includes a levy for public roads purposes under the mandate of the 1885 local act, supra, and that the said sum of $95,898.07 now belongs to complainant and should be paid to it; that respondents are threatening to pay over to others than complainant all the moneys in the said general fund in disregard of the right of complainant to be paid the said sum of $95,898.07 and will make such payment to others in disregard of complainant's rights unless they be restrained from so doing by injunction.

In substance, the bill further avers: That the tax levy instrument adopted in February, 1945, by the governing body of Jefferson County for the year 1945 is in all material respects similar to that adopted for the year 1944 but that no taxes had been collected thereunder at the time the bill was filed; that in the adoption of future annual tax levy instruments it is the purpose of the governing body of Jefferson County to continue to neglect to perform its mandatory duty under the said 1885 local act as it has neglected to perform such mandatory duty in the adoption of the tax levy instruments for the years 1944 and 1945.

The bill seeks the following relief: (1) an injunction, restraining respondents from paying out of the general fund any portion of such fund as will not leave therein the sum of $95,898.07; (2) a mandatory in-

junction requiring the members of the governing body of Jefferson County to reform retrospectively, as of the time of adoption thereof, the tax levy instruments for the years 1944 and 1945 so as to make each of said tax levy instruments show expressly a levy for public road purposes in accordance with the terms and provisions of the said 1885 local act, supra; (3) a mandatory writ of injunction commanding the treasurer of Jefferson County to pay to complainant out of the general fund the sum of $95,898.07 arising from the tax levy instrument of 1944; a mandatory writ of injunction commanding the members of the governing body of Jefferson County and their successors in office annually to levy in and for years succeeding 1945 a tax of one-tenth of one per centum for public roads purposes in accordance with the terms and provisions of the 1885 local act, supra.

The bill appears to have been filed on March 19, 1945, and on the same day respondents executed the following agreement: "For the purpose of obviating the necessity of the court considering the City of Birmingham's application for a temporary injunction, it is hereby agreed by and upon the part of all the respondents that the rights of the City as they exist on this day shall continue to be the same as they would be if the court issued on this day the temporary injunction prayed for."

As amended, the bill alleges that there is a justiciable controversy between the complainant and respondents as to complainant's right to participate in the fund now in the county treasury under the levy for the year 1944 and prays a declaratory judgment or decree in respect to such controversy.

There were seventy grounds of the demurrer filed by respondents, but all grounds are not argued in brief and under our uniform rule those grounds not argued will be treated as waived. Hackney v. Yarbrough, 233 Ala. 365, 172 So. 107.

The first proposition argued by respondents is that the 1885 local act has been repealed by subsequent enactments of the legislature of Alabama. As we understand the respondents' contention in this regard, it is that § 1 of the 1885 local act, supra, has been impliedly repealed by provisions of three subsequent local acts affecting Jefferson County, Act No. 405, H. 247, approved February 19, 1887, Acts of Alabama, 1886–87, p. 847; Act No. 117, H. 74, approved December 17, 1894, Acts of Alabama 1894–95, p. 205; Act No. 477, H. 914, approved February 16, 1897, Acts of Alabama 1896–97, p. 1079. Respondents then, to illustrate how the aforesaid local acts impliedly repeal § 1 of the 1885 local act, supra, proceed to attempt to show how still other acts, local and general, impliedly repeal the last mentioned of the aforesaid local acts.

The 1887 local act, supra, affected § 1 of the 1885 local act, supra, only to the extent that it provided that the governing body of Jefferson County could set apart from time to time the tax authorized by § 1 of the 1885 local act, supra, to pay interest on bonds which § 1 of the 1887 local act authorized Jefferson County to issue for the purpose of putting the roads of that county in good condition. Certainly there is nothing in the 1887 act to indicate that the Legislature did not intend for the provisions of § 1 of the 1885 local act, supra, to remain in effect. In fact its continued existence is clearly shown. This local 1887 act was considered in Board of Revenue of Jefferson County v. City of Birmingham, 205 Ala. 338, 88 So. 16, and it was held that it did not affect the rights of the City of Birmingham in that proceeding.

The 1894 local act, supra, certainly does not repeal the provisions of § 1 of the 1885 local act, supra. On the contrary it provides in effect that all the moneys garnered from such tax shall be covered into a "Road Fund" and "no part thereof shall be used for any purpose, other than paying the interest on said bonds [authorized by the 1887 local act, supra] as it accrues and maintaining in good order all the macadamized roads of said county and making more of such roads, and of working the other public roads of said county." Some of the other provisions of the 1885 local act, supra, are materially affected by this local act of 1894, such as those relating to supervision of the roads, the requirements as to the working of roads, the letting of contracts, etc.

The 1897 local act, supra, expressly amends the local act of 1894, supra, but affects § 1 of the 1885 local act, supra, only as to the use to which proceeds derived from the tax are to be put, limiting their use to the payment of the interest on the bonds authorized by the 1887 local act, supra, and to the maintenance and construction of macadamized roads in the county. This act also contains provisions materially affecting those provisions of the local act of 1885 relating to the working of the roads, the making of contracts relating to roads and the supervision of the roads. But it cannot in any sense of the word be said to repeal impliedly the provisions of § 1 of the 1885 local act relating to the levy of a tax for road purposes.

Even if it be conceded that local and general acts passed subsequent to the 1897 local act, supra, have so materially altered its provisions as to work repeal thereof by implication, such result does not affect the existence of § 1 of the 1885 local act, supra, the provisions of which relate solely to the levy of the tax for road purposes.

One of the acts relied upon by defendants as indicating that the said 1897 local act has been repealed by implication is a local act affecting the road program of Jefferson County, approved March 3, 1903, Local Acts 1903, p. 127. Irrespective of the effect which this act has on previous legislation relating to the method of working, maintaining and constructing roads, it does not in any wise affect § 1 of the 1885 local act, supra. In fact, in § 4 thereof it clearly shows that the "road fund" created by the proceeds of the tax levy provided for in said § 1 is still in existence.

We have carefully examined the many acts and Code sections relied upon by respondents in support of their contention, and are clear to the conclusion that § 1 of the 1885 local act, supra, has not been repealed by any of them. "Repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former. This is never the case, if there be a reasonable field of operation, by a just construction for both; for then they will both be given effect. This is preferable to repeal by implication." City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159, 162.

The second contention of respondents is that the apportionment statute, being a general act, should not be construed as affecting the tax required to be levied by § 1 of the 1885 act and by subsequent local acts required first to be used for the payment of interest on bonds and the remainder to be expended solely for the working of the county roads.

There is no merit in this contention. It has been held to the contrary in the following cases: Board of Revenue of Jefferson County v. City of Birmingham, 205 Ala. 338, 88 So. 16; Board of Revenue of Jefferson County v. City of Birmingham, 205 Ala. 320, 88 So. 18; Commissioners' Court of Calhoun County v. City of Anniston, supra.

Respondents next contend that the 1885 local act, supra, is violative of § 105 of the Constitution of 1901 and in support of their contention cite the case of Norwood v. Goldsmith, 168 Ala. 224, 53 So. 84. Section 105 of the Constitution of 1901 is new to that Constitution; it had no counterpart in the Constitution of 1875 which was effective at the time the 1885 local act was passed. The prohibitions of § 23, Article 4 of the 1875 Constitution relate to individuals, corporations and associations. The local act condemned as violative of § 105 of the Constitution in Norwood v. Goldsmith was passed in 1907 and therefore subject to the provisions of § 105, Constitution of 1901. Constitutional limitations of this character are prospective, not retrospective, in their operation. They refer to future, and not to past legislation, undoing statutes enacted in pursuance of the rules of legislative procedure then prescribed. Phoenix Assurance Co. of London v. Fire Department of City of Montgomery, 117 Ala. 631, 23 So. 843, 42 L.R.A. 468. We conclude, therefore, that § 105 of the Constitution of 1901 has no application to the said local act of 1885. Moreover, the said 1885 local act does not contain the vices of the local act which was held invalid in Norwood v. Goldsmith, supra. The act with which we are

here concerned is in most respects similar to those considered and held not violative of §§ 104 and 105 of the Constitution of 1901 in the cases of Sisk v. Cargile, 138 Ala. 164, 35 So. 114, and Standard Oil Co. of Kentucky v. Limestone County, 220 Ala. 231, 124 So. 523.

Respondents next insist that the proviso in § 1 of the 1885 local act, supra, allows the governing body of Jefferson County to levy taxes only for "public buildings or bridges" out of the exceptional rate provided for by the second proviso of § 5 of Article 11 of the 1875 Constitution; that said proviso of said § 1 of the 1885 local act, supra, must, therefore, be stricken as violative of and repugnant to the second proviso of § 215 of the Constitution of 1901 in that the said second proviso of § 215 relates to taxes for road purposes as well as for public buildings and bridges; that said § 1 of the 1885 local act, supra, stripped of its proviso, would authorize the governing body of Jefferson County to levy a one-tenth of one per centum road tax there required out of either the one-half of one per centum general levy dealt with by the first clause of § 215 of the Constitution of 1901 or out of the exceptional rate permitted by the second proviso of § 215 of the Constitution; and that, therefore, the complainant has no standing under the apportionment statute to compel the governing body of Jefferson County to levy the said one-tenth of one per centum road tax out of the one-half of one per centum levy for general purposes dealt with in the first clause of § 215.

There is no merit in the contention of respondents that the proviso of § 1 of the 1885 local act is violative of the second proviso of § 215 of the Constitution of 1901. The reference to "necessary public buildings" and "bridges" in the said proviso to § 1 of the 1885 local act was obviously made solely for the purpose of indicating that the Legislature did not intend to limit the county's right to levy taxes to the one-half of one per cent levy dealt with in the first clause of § 5 of Article 11 of the Constitution of 1875, in so far as taxes for public buildings and bridges were concerned.

But even if it could be said that the said proviso of § 1 of the 1885 local act could be so construed, it would not follow that such proviso would be violative of the second proviso of § 215 of the Constitution. As above pointed out, § 215 is not a grant of power to the counties and until the Legislature authorizes a county to levy a road tax under the second proviso of § 215 it cannot do so. Respondents argue as if the proviso of § 1 of the 1885 local act has the effect of a constitutional provision. Of course, it has no such effect. The Legislature since as early as 1903 has authorized Jefferson County, along with other counties, to use the exceptional rate for road purposes and the exhibits to the bill in this case show that for many years that county has done so.

We do not agree with the insistence of respondents that even though § 1 of the 1885 local act be held to be constitutional and still in full force and effect and though its provisions are mandatory, that nevertheless the governing body of the county has ignored the mandate of the Legislature and failed to levy the road tax there provided for, and that therefore the complainants have no rights under the apportionment statute. It is contended that § 130, Title 12, Code of 1940, the apportionment statute, gives no rights to a city unless the governing body has expressly levied, as a part of the one-half of one per centum levy dealt with in the first clause of § 215, a tax for road purposes, or to put it another way, that a county can defeat the rights of a city given it by § 130, Title 12, supra, by ignoring an express mandate of the Legislature.

In support of this contention respondents lay considerable stress upon the case of County of Montgomery v. City of Montgomery, 190 Ala. 366, 67 So. 311. The City of Montgomery brought an action at law to recover from Montgomery County the sum of $30,000 which it contended it was due under the apportionment act. The City based its right to come under the said apportionment act on the fact that the county governing body made a general levy of one-half of one per centum for general purposes and that although there was no specification in the levy that any part of it

was to be for road purposes, that the county governing body subsequently transferred from the proceeds of the levy the sum of $85,000 to the road and bridge fund of the county from the general fund of the county, such transfer being in accordance with the provisions of § 5766, Code of 1907. This court in reversing the trial court in effect held that the City was not entitled to recover for the reason that the apportionment act had no application where a county acting under the provisions of § 5766, Code of 1907, transferred surplus funds from the general fund to the road and bridge fund, which funds had been garnered from a levy made for general county purposes and where there was no law that required a particular part of the one-half of one per centum levy to be designated for employment on public roads. It is apparent that the decision in that case is not authority for the position here taken by respondents. In distinguishing the case of Commissioners' Court of Tuscaloosa County v. State ex rel. City of Tuscaloosa, supra, Mr. Justice McClellan, writing for the court, said [190 Ala. 366, 67 So. 314]:

"By virtue of an act, applicable to Tuscaloosa County, approved September 29, 1903 (Local Acts 1903, p. 433), the order of the commissioner's court, considered in the last-cited decision, was made. See 180 Ala. 484, 61 So. 431. That local act was amended, as appears in local acts 1907, p. 227. The local act of 1903, in an effort to promote road improvement, provided that at the first regular meeting of the commissioners' court after December 1, 1903, and in each year thereafter, 'said court shall appropriate and set apart out of the taxes levied for general purposes in said county such sum as the condition of the county treasury shall warrant, but in no case less than one-sixth of 1 per cent. of the total assessed valuation of property in said county, which sum shall be a part of the one-half of 1 per cent. authorized by law for general county purposes.' Provision was then made with respect to the special road tax levied under section 215 of the Constitution, which this court considered when the decision reported in 173 Ala. 724, 54 So. 763, was delivered. It will be seen that a minimum proportion of the product of one-sixth of 1 per cent. on the total assessed value of all property tax laid and collected in Tuscaloosa county for general county purposes was fixed by the local act, thereby directly impressing that part of the tax levied for general county purposes with the law's imperative order devoting the sum so produced to the purpose defined in section 2 of the act of 1909. In other words, the indicated provisions of the local. act operated to imprint upon the levy, raising the money there sought by the city of Tuscaloosa for become a part of the road and bridge fund; general county purposes, the condition or exaction that of the product of the levy so made a definite proportion thereof should that the levy for general county purposes included as the result of legal command superior to the county body a specific percentage minimum of money raised by taxation under a levy for general county purposes that was, when collected by the county, a part of the road and bridge fund. No such law as that in force, in this respect, in Tuscaloosa county, is made to appear to be of force in Montgomery county to effect the question here presented."

 The effect of the decision in the case of Commissioners' Court of Tuscaloosa County v. State ex rel. City of Tuscaloosa, supra, is that a city is entitled to come under the terms of the apportionment act where there is an express mandate from the Legislature that a portion of the proceeds of the levy of one-half of one per centum dealt with in the first clause of § 215 of the Constitution be set apart for road purposes irrespective of whether there is an actual levy made for road purposes. The averments of the bill in the instant case are certainly sufficient to come within this rule.

 We do not agree with respondents that the said 1885 local act, supra, has been impliedly repealed by the general laws relating to the levying by counties of a special road tax under the second proviso of § 215 of the Constitution.

As we understand respondents' argument it is that under the Constitution of 1875 counties could not levy for road purposes

a special tax apart from their authorized levy and that as a result the state had no uniform system for the levying of county taxes for road purposes and various counties levied road taxes in accordance with particular local laws which were necessary to insure adequate funds for county purposes. But that, now, under the terms of § 186, Title 12, Code of 1940, the governing bodies of the counties are required to secure their funds for road purposes from the levy of a tax under the second proviso of § 215 of the Constitution, and that the fact that the Legislature has seen fit to enact such mandatory provision evidences the legislative intention to preserve the one-half of one per cent general levy by the county for ordinary purposes and to have road taxes come from the special levy dealt with in § 215 of the Constitution of 1901.

■ Section 186, Title 12, Code of 1940, does not, as the county contends, require the county governing bodies to secure funds to be used on county roads solely from the levy of a special tax under the second proviso of § 215, Constitution of 1901. It is purely an authorization such as is necessary before such a tax can be legally levied and collected. We have given careful consideration to the history of this section and think the conclusion is inescapable that the decision as to whether a special road tax shall be levied under the second proviso of § 215 is left to the discretion of the governing body of the county. In view of this construction, it is unnecessary for us to consider further the respondents' contention that the 1885 local act has been impliedly repealed, as its argument in this regard is predicated solely on the premise that § 186, Title 12, supra, is mandatory in character.

We have discussed all grounds of demurrer here argued, and are of the opinion that the court committed no error in overruling the same.

The rehearing is granted, the original opinion is withdrawn, the reversal is set aside, and the decree of the circuit court is affirmed.

Affirmed.

All the Justices concur.

**On Further Rehearing.**

PER CURIAM.

Application overruled.

All the Justices concur, except BROWN, J., dissenting.

BROWN, Justice (dissenting).

This appeal is from a decree of the circuit court sitting in equity overruling the defendants' demurrer to the bill as last amended and was submitted here with leave to appellants to sever in the assignments of error. Bowden et al. v. Turner, 247 Ala. 352, 24 So.2d 429; Stacey et al. v. Taliaferro et al., 224 Ala. 488, 140 So. 748.

The bill is by the City of Birmingham, a municipal corporation against the County of Jefferson, the members of its county commission and the county treasurer, and sought to restrain and enjoin the defendants (appellants here) from using $95,890.-70 in the county treasury at the time the bill was filed, garnered by the collection of a property tax levied by the county for general county purposes for the year 1944, and for a mandatory decree compelling the county to pay said sum of money to complainant.

The bill, to state its substance, alleges that the county commission for the years 1944 and 1945, levied taxes up to the constitutional limit under its general power, for county purposes, without setting apart or apportioning any part of the taxes so levied for "the working of public roads in said county." See Local Act approved Feb. 17, 1885. Local Acts 1884–85, p. 709.

The county levied for the year 1944 a special tax of one and one-half mills on the dollar (fifteen cents on a hundred dollars) "for the purpose of paying any debts or liabilities now existing against Jefferson County incurred in the erection, construction or maintenance of necessary public roads, or that may hereafter be created in the construction of necessary public roads in said county, as provided and authorized in Section 215, subdivision (a) of the Constitution of 1901." A like special tax was levied for the year 1945.

The original bill further alleges that the county, and its county commission, in mak-

ing the levy for the years 1944-45, fraudulently ignored the mandatory duty imposed on it by the local act of February 17, 1885, for the purpose of depriving the complainant of the benefit of said act, by levying for general county purposes up to the limit fixed by the first clause of § 215 of the Constitution, without levying a special tax of ten cents on the hundred dollars for the construction and maintenance of public roads, as required by said act. That in previous years, since 1910, such levy had been made by the county and its county board under its general power of taxation, up to and including the year 1943. In consequence of which, the complainant was entitled to an apportionment of the revenue garnered from the levy on property within the city, under the provisions of §§ 129, 130, Title 12, Code of 1940. The bill asserts no right or interest in the special levy made under the provisions of subdivision (a), § 215 of the Constitution.

The demurrer takes the point that the bill is without equity. That said local act of 1885 confers no right on the complainant and it has no interest in the tax authorized or levied by said local act. That said local act is repugnant to § 5, Article XI of the Constitution of 1875, under which it was enacted.

The appellee, on the other hand, insists that the local act of February 17, 1885, is self-executing and levies the special tax specified in the act as a part of the county's general levy, or that the said act is mandatory, and requires the county board to levy said tax as a part of its general levy. That in previous litigation between the parties involving the right of the complainant to have funds garnered from property taxes levied by the county for road purposes, the integrity of the local act of February 17, 1885, was not questioned; but that the existence and integrity of said act was an essential element of the city's cause of action in the previous litigation, and defendant, the County of Jefferson, is estopped under the doctrine of *res adjudicata* from questioning the existence of said local act either because of its repeal or because it is repugnant to the Constitution under which it was enacted.

The local act approved February 17, 1885, is entitled, "An Act To provide for the working of public roads in Jefferson County by contract, and to further regulate the working of the roads in said county." Section 1 provides, "That the Court of County Commissioners of Jefferson County shall levy a special tax of one-tenth of one per cent. on the value of all taxable property in said county as assessed for revenue for the State, to be applied to the working of public roads in said county, as hereinafter provided; *Provided,* that no levy shall be made by said court, in any one year, exceeding one-half of one per cent. for the ordinary county purposes, not including necessary public buildings or bridges."

Section 2 authorizes the court from time to time to let contracts for "making and working of such portions of the public roads in said county as they may select;" *outside the corporate limits of the "city of Birmingham."* Section 3 provides for the hiring of convicts sentenced to hard labor to contractors. Section 4 requires contractors to give bond with sufficient surety for the performance of the contract. Section 5 provides that the work shall be done under supervision and direction of a civil engineer or engineers employed by the court. Section 6 provides for the payment of expenses and liabilities required or incurred under the act out of the moneys collected under said act. Section 7 provides that persons liable to road duty shall be required to work six days annually or pay $3 annually for exemption from road duty, with the proviso that such work or payment shall not exempt such persons from work in opening new roads.

It is conceded by appellee, and the reports of the cases show, that the constitutionality of the local act of February 17, 1885, was not questioned in any of the cases growing out of the controversy over claims for apportionment of funds. Some of the reported cases show that said act was not involved at all, but the contention of appellee is that the existence and validity of said act could have been litigated and, therefore, the County of Jefferson, appellant in this case, is precluded from raising the question of the existence or con-

stitutionality of said local act in the trial court or on this appeal.

Answering a like contention made in Commissioners Court of Tuscaloosa County v. State ex rel. City of Tuscaloosa, 180 Ala. 479, 61 So. 431, which involved the right of the city under the act, now §§ 129, 130, Title 12, Code of 1940, to an apportionment of moneys garnered under its general power of taxation, referring to said statute, it was observed:

"As heretofore held, the act (said §§ 129, 130, supra) was not violative of section 215 of the Constitution, in so far as it deals with the road tax derived under a general levy as distinguished from the special tax of one-fourth of 1 per centum, and it was not then suggested, upon the consideration of either of the above cases, that said act was repugnant to any other constitutional provision, and *it is neither the policy or custom of courts to wander into the field of speculation in order to gratuitously strike down a legislative enactment* on some point not made or suggested in the brief or argument of counsel. [Italics supplied.]

"We do not think that the judgment in the former proceeding is res judicata. The former mandamus sought the payment of a certain part of the one-fourth per centum of the special tax only, and did not include the tax in question. They are entirely separate and distinct demands having no legitimate relationship with each other, and one being governed by the act of 1909, but which has no application to the other, or which could not do so under the last part of section 215 of the Constitution. The distinction as to when a former judgment does and does not operate as a bar or estoppel against a second action is so well made in the case of Cromwell v. Sac County, 94 U.S. 351, 24 L.Ed. 195, that we quote the headnote in said case, notwithstanding it was heretofore quoted and followed in the case of Crowder v. Red Mountain Mining Co., 127 Ala. 254, 29 So. 847:
' "The difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand and its effect as an estoppel in another action between the same parties upon a different claim or cause of action is that in the former case the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. But, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered".'
* * *." 180 Ala. at pages 486, 487, 61 So. at page 432.

This holding is sustained not only by our cases—Central of Georgia R. Co. v. Dothan Nat. Bank, 206 Ala. 602, 91 So. 351; Crowder v. Red Mountain Mining Co., 127 Ala. 254, 29 So. 847; Irby v. Commercial Nat. Bank of Eufaula, 204 Ala. 420, 85 So. 509, but by a great wealth of authority. See 30 Am.Juris. pp. 912–915, §§ 166, 168, 172, where the authorities are collected.

It clearly appears from the allegations of the bill that the county commission did not levy a road tax for the years 1944 and 1945 under its general power of taxation, or apportion any part of its general levy for maintenance of roads. The only road tax levied for said years was levied under the provisions of subdivision (a) of § 215 of the Constitution, and it is now well settled that moneys arising from such levy are not subject to apportionment under the apportionment statutes. That point was expressly decided in Board of Revenue of Jefferson County v. State ex rel. City of Birmingham, 172 Ala. 138, 139, 54 So. 757, 759, reaffirmed in Commissioners' Court of Tuscaloosa County v. State ex rel. City of Tuscaloosa, 180 Ala. 479, 61 So. 431; Pike County Commissioners' Court v. City of Troy, 173 Ala. 442, 56 So. 131, 274, Ann Cas.1914A, 771.; Court of County Revenue of Franklin County v. Town of Russellville, 176 Ala. 609, 58 So. 253; State ex rel. City of Tuskegee v. Court of Com'rs of Macon County, 190 Ala. 631, 67 So. 394.

The local act of February 17, 1885, confers no right on the City of Birmingham. In fact, it expressly excludes said city from having the tax as levied thereunder, if valid for use within the city. And in the absence of a levy made by the county commission for roads under the general levy for county purposes, it has no legal or equitable right in revenues garnered by such levy. County of Montgomery v. City of Montgomery, 190 Ala. 366, 67 So. 311.

This leaves open the single question based on the appellee's contention that the local act of February 17, 1885, is constitutional, self-executing, and each year, levies a tax of ten cents on the hundred dollars on all taxable property assessed for state revenue in the county for construction and working of public roads, as a part of the county's general levy, or is mandatory to that end.

Said local act purports to require the county board of Jefferson County, "to levy a *special tax* of one-tenth of one percent on the value of all taxable property within the county as assessed for revenue for the state, to be applied to the working of public roads in said county." Outside the corporate limits of the City of Birmingham, as "provided in the act", it does not require that the tax shall be included in or a part of the levy authorized for general county purposes. Nor does it provide that any portion of the levy for general purposes shall be apportioned to such purpose.

The levy of the *special tax* under the local act of February 17, 1885, cannot be sustained under the last proviso of § 5, Article XI, of the Constitution of 1875, which is limited to "debt or liability now existing against any county, incurred for the erection of the necessary public buildings or other ordinary county purposes, *or that may hereafter be created for the erection of necessary public buildings or bridges,*" etc., as debts incurred in constructing or working of public roads, and was not therein contemplated or provided for. Birmingham Mineral R. Co. v. Tuscaloosa County, 137 Ala. 260, 34 So. 951.

The language of the local act of 1885 clearly shows that it was rested on the proviso authorizing the levy of *special tax-*es, and was passed in violation of said proviso, as *roads* were not within the scope of the proviso. But whether this is so or not, it clearly appears that the county commission for the years 1944, 1945, has exhausted its authority to levy taxes for general county purposes, in obedience to the provisions of the general statutes, which are mandatory, and has not set apart or levied any part thereof for roads. Therefore, it seems clear that a court of equity should not compel the commission to violate the Constitution or statutes under which the court's power is invoked. County of Montgomery v. City of Montgomery, 190 Ala. 366, 67 So. 311; State ex rel. City of Tuskegee v. Court of Com'rs of Macon County, 190 Ala. 631, 67 So. 394; Frederick v. Northern Alabama Railway Co., 130 Ala. 407, 30 So. 426. The bill seeks to enforce a statutory right and the basis of the right —*a levy for roads as a part of the fifty mills allowed for general county purposes* —is absent and the court is without power to make such levy.

The application for rehearing by appellee asserts that our opinion promulgated on the 17th of January, 1946, holds "For the First Time in the History of the State, *that the first clause of Section 5, Article 11,* of the 1875 constitution, as continued as the first clause of Section 215 of the 1901 constitution, is a Grant of Power to County Commissions to levy county taxes to the extent of the rate therein described, * * *."

This criticism ignores the fact that the opinion in Birmingham Mineral Railroad Co. v. Tuscaloosa County, 137 Ala. 260, 34 So. 951, was and is a pronouncement of the Supreme Court of Alabama, written by a distinguished lawyer and jurist who had served on the nisi prius and supreme bench of this state for a period of thirty-four years and before his retirement was the ranking associate justice of the court. That said opinion was concurred in by McClellan, Chief Justice, Tyson, Sharpe and Dowdell, Associate Justices who served with honor and distinction on this bench. It is a matter of history that said pronouncement was made immediately preceding the Constitutional Convention of

1901, and that, as a consequence of that decision, the last proviso in said section was amended by adding the words, *"or roads,"* following the word "bridges," where said word occurs for the second time in said proviso, and as thus amended the section was carried forward into the Constitution of 1901, as § 215. Southern R. Co. v. Cherokee County, 144 Ala. 579, 42 So. 66. That the opinion in Birmingham Mineral Railroad Co. v. Tuscaloosa County, supra, was subject to that interpretation is evidenced by the fact that the annotators to the Constitution since that date have so noted it. It will be noted that the appellee's criticism is limited to the first paragraph. After more mature consideration, we hold that the opinion in that case is subject to the interpretation that it holds and intended to hold that, the first clause of § 5, Article XI of the Constitution of 1875 was a limitation on the power of the Legislature, while the provisos are grants of power to the county, to levy special taxes for the specific purposes stated in said provisos. Our decisions have so interpreted and applied said provisos since Garland v. Board of Revenue of Montgomery County, 87 Ala. 223, 6 So. 402, decided in 1888, more than a half century ago. In said opinion [Birmingham Mineral R. Co. v. Tuscaloosa County, supra (137 Ala. 260, 34 So. 952)] the court observed:

"Under these limitations of power, it is clear, that no county, under the Constitution of 1875, could levy, in any one year, a greater rate of taxation on the value of the property therein, than one-half of one per centum, except to pay past debts and for public buildings and bridges; and that a county could not levy a special tax for any purpose other than those expressed in the provisos of said section 5, if such special tax together with the tax for general purposes, exceeded one-half of one per cent. * * *."

"We have already said, that in the levy of the special tax, the commissioners' court was confirmed by the terms of the Constitution itself, to making the levy, to pay debts or liabilities 'created for the erection of necessary public buildings and bridges.' The ratifying and confirming act of March 1, 1901, was not confined to these purposes.

The title to the act is, as we have seen, 'To ratify and confirm a levy of taxes by the commissioners' court of Tuscaloosa county, for the purpose of building necessary public bridges in said county, *and the further purpose of paying the interest on the bridge bonds and other bonded indebtedness of said county.*' (Italics ours.) This other bonded indebtedness is not specified, but it is made to appear, that it is not for public buildings or bridges alone. * * *."

The conclusion was that the ratifying act was beyond the power of taxation conferred by the proviso.

In a later case (Adams, Tax Collector, v. Southern Ry., 167 Ala. 383, 389, 52 So. 439, 441), dealing with the county's power of taxation under § 215, it was observed: "The whole section must, of course, be read and considered, in arriving at a true interpretation of any part of it. In the first proviso a like exception to that with which we are now concerned is made that debts on the prescribed date might be paid by taxation. Obviously, the area, the unit of taxation for that purpose is the county, and not a fraction thereof. This is rendered perfectly certain, if it were not otherwise by the fact that the debt contemplated is and must be the debt of the county, and not that of any fraction thereof. With like intent, 'county' is employed the second time in the section. *As there used, it intends that the power to impose a special tax is given, by way of exception from the prohibition of the general limitation, as a means to pay existing * * * debt or liability 'against the county.'* "

In Board of Revenue of Jefferson County v. State ex rel. City of Birmingham, 172 Ala. 138, 54 So. 757, 760, dealing with the power of counties to levy *a special tax* under § 215 of the constitution, and the power of the legislature to apportion the proceeds under the general apportionment act, it was observed:

" * * * Each character of government was intended to be, *and it is, armed with its own separate taxing power for its own separate sustenance;* and while the county can tax the property of the citizens within the municipality within the county, the exercise of that power is none the less

a county act, neither infractive of the municipal right nor expansive of the county power. A vital feature of this twin system of minor government is, of course, the taxing power; and the present organic law treats each separately, and sets down in independent sections the respective limitations on the taxing power of each class of subordinate governments. So, to conclude on this idea, if there be in the whole range of municipal and county authority and law points whereat these, in a sense, twin governments become blended in authority and purpose, the taxing power (and necessarily the benefit thereof must coincide with and conform to that power and its exercise) is not one of the means inviting that result. It hence necessarily follows that the exercise of each authority of *its taxing power must redound to its benefit,* to its warrantable purpose, alone. * * *

" * * * All doubts must be resolved in favor of validity; but the doubts so to be resolved must, of course, find inspiration in the organic law as applied to the enactment, and the enactment, however emphatic its declaration, cannot alone cast the conclusion. * * *

"That the Constitution makers did not intend the inclusion of *streets* in the term *'roads,'* as used in section 215, will appear from reference to sections 220, 223, 225, 227, and 228. In each of these sections the term *'street'* is employed as aptly descriptive of a thoroughfare in municipalities. Along with its use in that connection the terms *'avenues,' 'alleys,' 'sidewalks,' 'street paving,'* and *'street improvements,'* all having reference to urban ways alone, appear. None of these terms even suggest any relation to the rural highway, which, to us, is familiarly known, in statute and decision, as a *'public road.'* So that we feel impelled to affirm that the makers of the Constitution recognized and wrote to the generally well-understood distinction, in reference between roads and streets—a distinction thus aptly noted by Stone, J., in McCain v. State, 62 Ala. 138: 'Manifestly, what we know as a public road or highway has very little resemblance to a street in a village, town, or city. * * * They cannot be both a public road of the county, as that phrase is understood, and a street of an in-

corporated village at one and the same time. One character must yield to the other.' * * *

"Section 215, in the proviso under consideration, expressly confines the application of the fund raised by the special tax to the purpose for which it is levied and collected. Unquestionably no right rests with the Legislature to impair, much less defeat, the exercise of the power which the Constitution contemplates. Indeed, to go further, the Legislature cannot fix such conditions to the exercise of the power and the ultimate application of the fruits of its exercise as to qualify the power and to restrict the legitimate benefit thereof to its objective. If the Legislature may direct, as in the act in hand, that a percentage of the fund raised by the special tax paid on property within a municipality shall be paid over to the municipal authorities, it would, of course, be permissible to direct that all of the special tax paid on property within municipalities shall be paid to those authorities, to be applied to the improvement of thoroughfares within them only. The immediate result of such legislative direction is to divest the governing body of counties of any discretion in respect to the application of the part of the special fund drawn from the special tax paid on property within municipalities, and to require application of a part thereof (that paid on property in municipalities) to designated highways in municipalities. In other words, that process of legislative control (if sustained) would toll the sum available to the application of the county governing bodies to the purpose contemplated in the Constitution (section 215) to the extent that property in municipalities contributed to the special fund. The Constitution's warrant under the pertinent proviso, is to the *county,* and the Legislature cannot qualify or impair it. * * *

"Broadly considered, the sum of the whole matter is that the Constitution (by proviso) permits the investment of the counties with the special power to tax for the special purpose of constructing and maintaining public roads, and commands the application of this tax fund to that purpose alone; while the Legislature had undertaken by this act to direct the applica-

tion of the fund pro tanto, to municipal streets, thereby necessarily denying to rural sections of the counties the benefit of that percentage of the fund contributed by property owners in municipalities. * * *." [Italics supplied.]

The soundness of the opinion in the last cited case, from which we have quoted excerpts, has been reaffirmed in the following cases: Commissioners' Court of Tuscaloosa County v. State ex rel. City of Tuscaloosa, 180 Ala. 479, 61 So. 431; Pike County Commissioners' Court v. City of Troy, 173 Ala. 442, 56 So. 131, 274, Ann. Cas.1914A, 771; Court of County Revenue of Franklin County v. Town of Russellville, 176 Ala. 609, 58 So. 253; State ex rel. City of Tuskegee v. Court of Com'rs of Macon County, 190 Ala. 631, 67 So. 394.

In the last cited case, this court, dealing with the validity of the apportionment act, by Justice Somerville, observed: " * * * It has been settled by our decisions that, in so far as that act relates to special road and bridge taxes levied under the authority of subdivision 'a' of section 215 of the Constitution, it is in conflict with the last clause thereof, and is therefore, as to such special levies, inoperative and void. * * *."

In the case of Town of Russellville, supra, a petition for writ of mandamus "to compel the court of county revenue, appellant, to pay over to said petitioner its legal share of the amount collected under a special levy for roads and bridges," this court, speaking by Justice Simpson, on April 4, 1912, observed:

" * * * * This court has previously fully considered this matter, and has held that where the levy is a special one, under said section of the Constitution, the Legislature is without authority to have a portion of the money realized from said tax paid over to municipal authorities." The case of Board of Revenue of Jefferson County v. State ex rel. City of Birmingham, supra, was cited.

The State v. Street et al., 117 Ala. 203, 23 So. 807, involved the constitutionality of an act requiring the court of county commissioners of Marshall County, to "appropriate and set apart out of the taxes levied for general purposes in said county, * * * one-eighth of one per centum on the assessed valuation of said county, which sum shall be part of the one-half of one per centum authorized by law for county purposes. Said fund shall be known as the road fund of Marshall county, * * *." The observations of the court in the opinion in that case were limited to the first clause in Article XI, § 5 of the Constitution of 1875, that no county in this state shall have authority, "to levy a larger rate of taxation, in any one year, on the value of the taxable property therein, than one-half of one per centum." The authority of the court of county commissioners to levy a special tax under the proviso in said section was not a question involved. The question involved in Hare v. Kennerly, 83 Ala. 608, 3 So. 683, 684, was the validity of Section 8 of the act approved December 8, 1880, which provided:

"Be it further enacted, That in execution of the trust assumed by the State in said act of February 11, 1879, to provide legislation to carry into effect the adjustment and settlement referred to in the title of this act, a tax of three-fourths of one per-centum for each year, until the bonds and coupons under this act are fully paid, is levied, as authorized by the constitution, and shall be collected on the value of all the real estate and personal property within the limits of said city of Mobile, as the same are defined in the charter of said city, which was vacated and annulled by the aforesaid act of February 11, 1879, according to the value of such property as the same may have been assessed for State taxation during the year preceding that for which said tax is levied and is to be collected." Acts 1880–81, pp. 329–360.

The insistence there was that this act violated Section 4 of Article XI, providing: "The General Assembly shall not have the power to levy, in any one year, a greater rate of taxation than three-fourths of one per centum on the value of taxable property within this State." Constitution 1875, Art. XI, 4. The act of February 11, 1879, referred to in the quoted excerpt vacated the charter of Mobile, a municipal corporation, and imposed on the state a duty to levy taxes to take care of the out-

standing obligations of the City of Mobile, which was afterwards incorporated as the "Port of Mobile". The court sustained the validity of the act on the theory that by the abolition of the City of Mobile, the power of taxation conferred on the City of Mobile, by the proviso in Section 7 of Article XI of the Constitution of 1875, to the effect that: "This section shall not apply to the city of Mobile, which city may, until the first day of January, one thousand eight hundred and seventy-nine levy a tax not to exceed the rate of one per centum, and from and after that time a tax not to exceed the rate of three-fourths of one per centum, to pay all the expenses of the city government, and may also, until the first day of January, one thousand eight hundred and seventy-nine, levy a tax not to exceed the rate of one per centum and from and after that time, a tax not to exceed the rate of three-fourths of one per centum, to pay the existing indebtedness of said city, and the interest thereon" reverted to the state for the purpose of carrying out the trust created by the 1879 act, notwithstanding the general limitation embodied in § 4, Art. XI, the court observing: "The tax levied under section 8 of the act of December, 1880, is precisely the rate here authorized—three-fourths of 1 per centum; and the express purpose for which it was levied and is to be collected is 'to pay the existing indebtedness' of said city, as compromised under the direct authority of legislative sanction."

There is nothing in said local act that requires the county board to apportion funds accruing from taxes under the levy for general county purposes for the construction or maintenance of roads; and in the absence of a levy for taxes for construction or maintenance of public roads, within the one-half of one percent, the city is without right to an apportionment, under the provisions of §§ 129, 130, Title 12, Code of 1940. State ex rel. City of Tuskegee v. Court of Com'rs of Macon County, supra.

In short, the complainant by its bill seeks to compel the county, by judicial decree, to set apart and apportion a sum equal to five cents on the hundred from the revenue garnered as taxes from property within the city limits (under the general levy for county purposes), as a fund for the upkeep and maintenance of public roads,—a result not sanctioned or provided for by §§ 129, 130, supra.

Moreover, pretermitting the question of an adequate remedy at law, and treating the local act of February 17, 1885, as valid, mandatory, and in full force, the county commission by the levy of a special tax equal to or in excess of ten cents on the hundred dollars for roads, or to pay debts created for construction and maintenance of roads, has literally complied with the mandate of said act by making the levy as authorized by § 215(a) of the Constitution, and the provisions of the Constitution inhibit its devotion to any other purpose. State ex rel. City of Tuskegee v. Court of Com'rs of Macon County, 190 Ala. 631, 67 So. 394.

Therefore, in my opinion, the bill is without equity and nothing appearing therein showing that it can be given equity by amendment, the decree of the circuit court should stand reversed, and one here rendered sustaining the demurrer and dismissing the bill.

I, therefore, respectfully dissent from the opinion and holding of the majority.